515 S.E.2d 768

**The STATE of South Carolina, Respondent,**

v.

**Max Reed WHISONANT, Appellant.**

**No. 2972.**

Court of Appeals of South Carolina.

Heard March 10, 1999.

Decided April 5, 1999.

Stephen D. Schusterman, of Rock Hill, for appellant.

Attorney General Charles M. Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott and Senior Assistant Attorney General Harold M. Coombs, Jr., all of Columbia; and Solicitor Thomas E. Pope, of York, for respondent.

GOOLSBY, Judge:

The appellant, Max Whisonant, was convicted of committing a lewd act upon a child under the age of fourteen. He appeals, contending the trial court erred (1) in denying his motion for directed verdict, and (2) in admitting hearsay testimony regarding details of the alleged molestation told by the victim to a third party. We affirm as to the directed verdict motion, reverse as to the admissibility of the hearsay testimony, and remand.

## FACTUAL BACKGROUND

The victim was twelve years old at the time of trial. The defendant, Max Whisonant, was the father of her friend, Amy Whisonant. The Whisonants lived across the street from the victim's father and stepmother. The victim often visited the Whisonant home. She spent the night there almost every

other weekend when she had visitation with her father. When the victim spent the night at the Whisonant home, she slept on the couch in the living room. The living room also contained a television set and a round chair.

The victim testified the last time she spent the night at the Whisonant home was November 30, 1996, which was the night Whisonant allegedly molested her. She fell asleep on the couch at approximately 10:00 to 10:30 p.m. and woke up around "twelve something." When she awoke, Whisonant was sitting in a kitchen chair next to where she was sleeping on the couch. The television was on. Mrs. Whisonant and Amy were in their respective bedrooms. The Whisonant's oldest daughter, Sherry, arrived home from a date and walked through the living room to her bedroom.

The victim testified that after Sherry walked through the living room, Whisonant started touching her breast area, both on top of and underneath her clothing. She also testified that he unbuttoned her shorts and attempted to touch her below the waist. She kept her legs, however, crossed against her chest. She testified that Whisonant told her to "open up," but she kept her legs closed. She also testified that he threatened to kill her if she told anyone. She testified that she did not scream because Whisonant had his hand drawn back like he was going to kill her. After this incident, Whisonant went into his bedroom where his wife was sleeping and closed the door.

The victim testified that she did not leave the Whisonant home immediately because it was dark and she did not have a key to her father's house. She testified that she did not call her parents because the telephone was beside the Whisonant's bedroom door. Sometime after the incident, the victim fell asleep on the couch. The victim got up around 9:00 a.m. the next morning. Whisonant was not in the house because he had driven Sherry to work. Whisonant returned to the house as the victim was collecting her things to go home.

The victim went to her father's house and told him Whisonant had touched her where he should not have. She told her father nothing else at that time. A few minutes later, her stepmother arrived home. They went to a separate room, and the victim told her stepmother the details of the incident. The victim's stepmother called Mrs. Whisonant, who came over to

the house. The victim told Mrs. Whisonant the details of what had occurred. Her stepmother also called the police.

Whisonant denied that he made any attempt to molest the victim. He testified that she had been with his family most of the day and spent the night at his home. Whisonant admitted watching television in the living room where the victim was spending the night. Whisonant also testified his wife was awake at this time. He also testified his oldest daughter, Sherry, was on a date and came through the living room after she returned.

## I. DIRECTED VERDICT

■ Whisonant argues the trial court erred in denying his motion for directed verdict on the ground there was an insufficient showing that the alleged touching was done with the intent of gratifying the passion or lust of either himself or the victim. We disagree.

■ In reviewing the denial of a directed verdict motion in a criminal case, the evidence must be viewed in the light most favorable to the State, and if any direct evidence exists that tends to prove the guilt of the accused, an appellate court must find that the case was properly submitted to the jury. *State v. Kelsey*, 331 S.C. 50, 502 S.E.2d 63 (1998).

We are of the opinion that the victim's testimony recounted above provided sufficient evidence to withstand a motion for directed verdict. *See e.g. State v. Hardee*, 279 S.C. 409, 308 S.E.2d 521 (1983); S.C.Code Ann. § 16–3–657 (1976) (the testimony of the victim in a criminal sexual conduct case does not need corroboration).

## II. HEARSAY TESTIMONY

Whisonant next challenges certain testimony the trial court admitted under the excited-utterance exception to the hearsay rule.

After the victim testified, the State called her stepmother as a witness. In anticipation of the stepmother's testimony regarding her conversation with the victim, defense counsel objected as follows:

The cases cited in the state's brief that allows this is once the witness is freed from the defendant's domain. In this case the testimony of [the victim] was that when she got up that morning that the defendant was not present, but that the defendant's wife and another daughter was present and, therefore, I would maintain that at that point she was free from any influence of the defendant, and had an opportunity to speak, then, and, therefore, it doesn't carry over so far as the time she goes home and talks to them.

The trial court overruled defense counsel's objection, stating "I find that she was within his domain until the time she left his premises. It doesn't say presence, it says domain."

The stepmother testified the victim was very upset when she saw her that morning. She was shaking and crying and had her arms folded in front of her. The victim asked to speak to her privately. Over defense counsel's objection, the stepmother testified the victim told her the following details:

She told me how she woke up in the middle of the night; that the defendant had slid his hands up underneath her blouse, and he was fondling her bare breast; that she was trying to cross herself, and pull away; that she was trying to pull away, and that he proceeded to undo the top of her pants, and she was trying to cross her legs, and pull away, and he raised his hand, and told her not to tell anybody or he would kill her, and told her to open up. She said she was trying to keep him from getting his hand down between her legs.

We agree with Whisonant's contention that the trial court erred in admitting the stepmother's testimony.

■ Rule 801(d)(1)(D), SCRE, provides a statement is not hearsay if the declarant testifies at trial and is subject to cross examination concerning the statement and the statement is "consistent with the declarant's testimony in a criminal sexual conduct case . . . where the declarant is the alleged victim and the statement is limited to the time and place of the incident." This rule incorporates a prior recognized exception to the hearsay rule for limited corroborative testimony in a criminal sexual conduct case. *See Simpkins v. State*, 303 S.C. 364, 401 S.E.2d 142 (1991) (When the victim testifies, evidence from other witnesses that she complained of the sexual assault is

admissible in corroboration, limited to the time and place of the assault and excluding details or particulars); *Jolly v. State*, 314 S.C. 17, 443 S.E.2d 566 (1994). Obviously, the testimony of the stepmother contains detail which exceeds the parameters of this rule. Thus, her testimony constitutes hearsay.

Rule 803(2), SCRE, provides for an "excited utterance" exception to the hearsay rule. The exception provides "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is not excluded by the hearsay rule even though the declarant is available as a witness. The rationale behind the excited utterance exception to the hearsay rule is that the startling event suspends the declarant's process of reflective thought and, consequently, reduces the likelihood of fabrication. *State v. Hill*, 331 S.C. 94, 501 S.E.2d 122 (1998). The mere fact that a statement was made some time after the incident occurred does not mean the statement cannot qualify as an excited utterance, provided the circumstances surrounding the statement indicate its reliability. *State v. Burroughs* 328 S.C. 489, 492 S.E.2d 408 (Ct.App.1997).

We feel this case is controlled by *Burroughs*. In that case, this court concluded a time period of ten hours between a sexual attack and the statement of the victim to a police officer and a nurse about the attack was too long to qualify under the excited utterance exception. The victim had two opportunities to speak to her children and her husband during this interval. This court also noted the victim's own testimony indicated she used the hours to compose herself and decide exactly how she would tell her husband what happened. *Id.*

Here, the evidence shows the victim did not give the statements that formed the basis of the stepmother's testimony until she returned to her father's house nine hours after the incident in question and it shows the victim had an opportunity to speak with her friend and her friend's mother about the incident but did not do so. The incident occurred, she says, around midnight. Rather than attempt to return to her father's house, which was just down the street, she went to sleep and slept until around 9:00 o'clock the next morning.

When she awoke, Whisonant was not in the house, although he did come in before she left to go home.

An improper introduction of hearsay evidence constitutes reversible error only if its admission is prejudicial to the defendant. Whether trial errors are harmless depends on the circumstances of each case. The materiality and prejudicial character of the error must be determined from its relationship to the entire case. Trial errors are harmless where they could not reasonably have affected the result of the trial. *State v. Mitchell,* 286 S.C. 572, 336 S.E.2d 150 (1985).

The challenged evidence is admittedly cumulative, but that it was so does not render it harmless. "Improper corroboration testimony that is *merely cumulative to the victim's testimony,* ... cannot be harmless, because it is precisely this cumulative effect which enhances the devastating impact of improper corroboration." *Jolly v. State,* 314 S.C. 17, 443 S.E.2d 566 (1994).

Here, the State introduced no physical evidence of the molestation. The case was essentially a swearing contest, pitting Whisonant's word against the victim's as to whether the incident occurred. The stepmother's testimony mirrored the victim's testimony, improperly bolstering the victim's story in the minds of the jury. The trial court's error in allowing it in evidence was not, in our view, harmless.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

HOWELL, C.J., and CONNOR, J., concur.