565 S.E.2d 321

**The STATE, Respondent,**

v.

**Malcolm D. JEFFCOAT, Appellant.**

**No. 3519.**

Court of Appeals of South Carolina.

Heard Jan. 10, 2002.
Decided June 17, 2002.

394

Assistant Appellate Defender Robert M. Pachak, of SC Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Robert E. Bogan, Assistant Attorneys General Toyya Brawley Gray and Christie Newman Barrett, all of Columbia; Solicitor Donald V. Myers and Deputy Solicitor C. Dayton Riddle, both of Lexington, for respondent.

SHULER, J.

Malcolm Jeffcoat appeals his convictions on four counts each of criminal sexual conduct with a minor in the first degree and committing a lewd act upon a minor, arguing the trial court erred in admitting into evidence prior consistent statements of the victim. We affirm.

### FACTS/PROCEDURAL HISTORY

The victim in this case is Malcolm Jeffcoat's step-granddaughter by virtue of his marriage to her paternal grandmother. Victim visited the Jeffcoats often, spending two or three Saturdays a month at their home and occasionally accompanying them on camping trips.

At some point in early 1997, Victim's mother noticed that when Victim returned from visiting the Jeffcoats she was irritable and "sassy," which did not reflect the child's normal personality. Victim also began exhibiting odd behavior, such as licking herself and the walls and windows of the family's home. According to Mother, one evening she discovered

Victim, then just three years old, "masturbating with [her] baby doll." Concerned, Mother asked Victim about the incident and Victim eventually told her Jeffcoat had "put his weenie on her toodie."

Mother contacted Victim's pediatrician the next day, and two days later the family went to a local center for sexually abused children. The center's staff notified authorities and scheduled appointments for Victim with Margaret Taylor, a post-trauma therapist, and Dr. Dwight Reynolds, a pediatrician. Among other things, Victim told Taylor Jeffcoat had "hurt [her] hiney with his weenie" and "put his weenie in [her] mouth." Upon examination of Victim, Reynolds noted an unusual lack of a gag reflex and both anal and vaginal physical abnormalities "indicative of recurrent penetration."

In March 1999, a Lexington County grand jury indicted Jeffcoat on five counts of criminal sexual conduct with a minor, first degree, and five counts of committing a lewd act on a minor. At the time of trial in September 1999, Victim was five years old. She testified, describing the incidents of abuse and naming Jeffcoat as the perpetrator. Following Victim's testimony, Mother and then Taylor, Victim's therapist, testified. Over defense objections and pursuant to Rule 801(d)(1)(B), SCRE, both repeated Victim's statements describing the abuse by Jeffcoat.

A jury convicted Jeffcoat on four counts of each offense, and the trial court sentenced him to twenty years imprisonment on each criminal sexual conduct charge and ten years on each charge of committing a lewd act upon a minor. This appeal followed.

## LAW/ANALYSIS

The sole issue on appeal is whether the trial court erred in permitting Mother and Taylor to testify in detail about Victim's out-of-court statements regarding the alleged abuse, thereby improperly bolstering Victim's credibility with inadmissible hearsay testimony.

In South Carolina, a sexual assault victim's prior consistent statements limited to the time and place of the alleged incident are not hearsay if the victim testifies at trial and is

subject to cross-examination. Rule 801(d)(1)(D), SCRE. This rule incorporates our state's previously recognized hearsay exception for "limited corroborative testimony in a sexual conduct case." *State v. Whisonant,* 335 S.C. 148, 154, 515 S.E.2d 768, 771 (Ct.App.1999); *see Simpkins v. State,* 303 S.C. 364, 401 S.E.2d 142 (1991) (recognizing corroborative statements of alleged criminal sexual conduct victims that are limited to time and place of the alleged assault as a well-settled exception to the rule against admitting hearsay testimony).

The rule expressly allows other witnesses to testify the victim complained of the assault, but only as to "time and place"; it specifically circumscribes such testimony by "excluding details or particulars." *State v. Schumpert,* 312 S.C. 502, 506, 435 S.E.2d 859, 862 (1993). Among the details which must be excluded under the rule is the identity of the alleged perpetrator. *See Jolly v. State,* 314 S.C. 17, 443 S.E.2d 566 (1994). The record clearly reflects the testimony offered by Mother and Taylor encompassed detailed aspects of Victim's statements, including naming Jeffcoat as her abuser. By going beyond mere time and place, neither Mother's nor Taylor's testimony relating the statements falls within the scope of admissibility under Rule 801(d)(1)(D). *See Whisonant,* 335 S.C. at 155, 515 S.E.2d at 771 (finding testimony containing detail exceeding the parameters of the rule constitutes hearsay).

The trial court, however, admitted the testimony of both witnesses under rule of evidence 801(d)(1)(B). This rule renders a hearsay statement potentially admissible if it is consistent with the declarant's trial testimony and "is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." Rule 801(d)(1)(B), SCRE; *see State v. Fulton,* 333 S.C. 359, 509 S.E.2d 819 (Ct.App.1998). When all requirements of the rule are met, the whole of the prior statement, including specific details, is admissible in evidence. *Fulton,* 333 S.C. at 364, 509 S.E.2d at 821 ("Pursuant to Rule 801, the prior consistent statement is nonhearsay and comes in as substantive evidence, i.e., it is admissible for the truth of the matter asserted.").

 Jeffcoat contends the trial court erred in allowing Mother and Taylor's testimony because defense counsel conducted "just normal cross-examination" that neither attacked Victim's character nor implied fabrication. In response, the State asserts counsel "clearly and repeatedly implied" Victim had been "coached;" thereby alleging an improper influence such that her prior statements to both Mother and Taylor fell within the ambit of Rule 801(d)(1)(B).

We agree with the State that defense counsel raised the issue of improper influence or "coaching" by asking Victim whether she "practiced" before testifying and whether anyone had told her what to say. Counsel specifically inquired whether Victim had talked to Mother about what she was going to say in court and whether the solicitor told Victim "what things to say in the courtroom." These questions impliedly charged improper influences by Mother and the prosecution. *See State v. Wells*, 522 N.W.2d 304, 309 (Iowa Ct.App.1994) (finding alleged victim's prior consistent statements admissible where defense counsel asked "whether others had suggested his testimony"); *State v. Mensing*, 297 Mont. 172, 991 P.2d 950 (1999) (noting prosecutor's alleged coaching of a sexual assault victim could constitute an assertion of improper influence if the victim was asked about the substance of her conversations with the prosecutor or whether she had discussed the content of her trial testimony with anyone).

 Jeffcoat's allegation of improper influence, however, does not end our inquiry. As a prerequisite to admissibility under 801(d)(1)(B), the party offering a prior consistent statement must demonstrate the statement was made "before the alleged fabrication, or before the alleged improper influence or motive arose." Rule 801(d)(1)(B), SCRE; *see Fulton*, 333 S.C. at 374, 509 S.E.2d at 827 ("[W]hen a prior consistent statement is offered for the purpose of rebutting an express or implied charge that the witness's testimony is the result of a recent fabrication or improper influence or motive, the statement must predate any alleged improper influence or motive."); *State v. Phillipo*, 623 A.2d 1265, 1268 (Me.1993) ("As the party offering the prior consistent statements, it is the State's burden to establish that the statements were made before the motive arose."); *State v. Carlson*, 392 N.W.2d 89, 91 (S.D.1986) ("Before a prior consistent statement will qualify

as nonhearsay under [801(d)(1)(B) ], the *proponent* must demonstrate . . . the prior consistent statement was made prior to the time the proposed motive to falsify arose.") (emphasis added) (citations omitted).

This requirement modifies federal rule 801(d)(1)(B) in light of the Supreme Court's decision in *Tome v. United States*, 513 U.S. 150, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995). *See* Note, Rule 801(d)(1)(B), SCRE. In *Tome*, the Court found the temporal requirement expressed in our rule implicitly "imbedded" in the federal rule, and therefore held prior consistent statements could be introduced to rebut an allegation of improper influence or motive "only when those statements were made before the charged . . . improper influence or motive." *Tome*, 513 U.S. at 166, 167, 115 S.Ct. 696. In so doing, the Court reasoned a prior consistent statement "has no relevancy to refute the charge" of improper influence unless the statement "was made before the source of the bias, interest, influence or incapacity originated." *Id.* at 156, 115 S.Ct. 696 (citation omitted). As the Court explained: "A consistent statement that predates the [influence] is a square rebuttal of the charge that the testimony was contrived as a result of that [influence]." *Id.* at 158, 115 S.Ct. 696.

Here, the trial court properly admitted the statement made by Victim to Mother that Jeffcoat "put his weenie on her toodie." Since this statement constituted Victim's initial disclosure of Jeffcoat's abuse, it obviously was made prior to any contact with the judicial system and thus could not have been the result of either Mother or the solicitor's alleged coaching of her court testimony. Similarly, Victim's prior consistent statements related in Taylor's testimony predate the family's exposure to the judicial branch; Mother testified the family only became involved with the solicitor's office and subsequent prosecution after Victim stopped seeing Taylor for therapy. Accordingly, the trial court properly found Victim's statements to Taylor admissible to rebut the charges of improper influence. *See Fulton*, 333 S.C. at 364, 509 S.E.2d at 821; *State v. Street*, 202 Wis.2d 533, 551 N.W.2d 830, 839 (Ct.App.1996) ("[C]onsistent statements made prior to the alleged coaching of the children are admissible.").

**AFFIRMED.**

CURETON and STILWELL, JJ., concur.