THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS
PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
The State, Respondent,
v.
John J. Rivera, Appellant.
 
 
 

Appeal From Greenville County
 Edward W. Miller, Circuit Court Judge

Unpublished Opinion No. 2006-UP-087
Heard November 9, 2006  Filed February 10, 2006

 
AFFIRMED

 
 
 
Jessica Ann Salvini, of Greenville; for Appellant.
Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Attorney General Harold M. Coombs, Jr., all of Columbia; and Solicitor Robert M. Ariail, of Greenville; for Respondent.
 
 
 

PER CURIAM:  John J. Rivera appeals his conviction for criminal sexual conduct (CSC) with a minor, first degree.  He contends the trial court erred in:  (1) denying his motion to sever the two indictments charging him with CSC with a minor, first degree, and lewd act upon a child; (2) denying one of his voir dire requests; (3) admitting certain testimony of three State witnesses; and (4) denying his motion for a mistrial.  We affirm.
FACTS
Since June of 1998, the victim lived with her mother, Melissa Gail Duncan, and her younger brother in Greenville, South Carolina.  The victim has a learning disability, and at the time of trial, she was ten years old.  Mrs. Duncan is still married to the victims father, Brad Duncan, and he sporadically lived with the family over this time frame.   
Mrs. Duncan has been a waitress at Waffle House since December of 1998, and it was while working that she met John Rivera.  Rivera was already a regular Waffle House customer when Mrs. Duncan began working, and the two of them quickly began a friendly relationship.  During a time of separation between Mr. and Mrs. Duncan, Mrs. Duncan began a romantic relationship with Rivera in April of 2000.  In May of 2000, Rivera moved into Mrs. Duncans mobile home and lived there with the family until January of 2001 when the couple amicably ended their relationship.  During the time of their relationship, Rivera watched the children while Mrs. Duncan worked, and no problems were reported to, or observed by, Mrs. Duncan.  
Beginning in February of 2001, Mrs. Duncan hired Margaret Hunter to baby-sit her children while she was at work.  In July of 2001, Mrs. Duncan and Rivera reconciled and began seeing each other again.  On July 31, 2001, Rivera, Mrs. Duncan, the victim, and her brother went to Stone Mountain, Georgia.  Due to the late hour of their return from this trip, everyone stayed at Riveras house in Travelers Rest, South Carolina. Rivera watched the children while Mrs. Duncan worked the following day.  
On August 4, 2001, Hunter baby-sat the victim while Mrs. Duncan worked.  The victim told Hunter that Rivera had been abusing her because, as she testified at trial: [M]y private part . . . was hurting so bad that I told her what was the matter.  When Mrs. Duncan arrived to pick up her daughter, Hunter instructed the victim to tell Mrs. Duncan about the abuse.  The victim explained that on multiple occasions Rivera had made her take off her clothes, fondled her, forced her to fondle him, and forced both oral and vaginal sex.  She also informed Mrs. Duncan that Rivera: [P]ut white stuff all over me, and the white stuff was from his private part down there.  The victim further stated that Rivera had shown her pornographic pictures on the internet, and asked her if she wanted to perform similar acts.  
Mrs. Duncan took her daughter to the hospital emergency room, but no examination was performed because too much time had elapsed since the last alleged abuse.  The hospital called the Travelers Rest Police Department, which referred Mrs. Duncan to the Child Advocacy Center.  On August 14, 2001, the victim was examined and interviewed at the Child Advocacy Center and also began receiving counseling.  Subsequently, the victim was interviewed by the Greenville County Sheriffs Office on October 16, 2001.       
Ultimately, a Greenville County grand jury indicted Rivera for CSC with a minor, first degree, and committing a lewd act upon a child.  After the jury found Rivera guilty of both charges, the trial court sentenced him to eighteen years imprisonment.[1]  This appeal followed.
DISCUSSION
I.  Severance of the Trial
Rivera argues the trial court erred when it refused to sever the indictments against him into two separate trials.  Specifically, he contends that consolidation of the two indictments was improper because the alleged sexual misconduct took place on different occasions and possibly in different places.  We disagree.
A motion for severance is addressed to the sound discretion of the trial court.  State v. Tucker, 324 S.C. 155, 164, 478 S.E.2d 260, 265 (1996); State v. Simmons, 352 S.C. 342, 350, 573 S.E.2d 856, 860 (Ct. App. 2002). The courts ruling will not be disturbed on appeal absent an abuse of that discretion.  Tucker, 324 S.C. at 164, 478 S.E.2d at 265; Simmons, 352 S.C. at 350, 573 S.E.2d at 860. 
Where the offenses charged in separate indictments are of the same general nature involving connected transactions closely related in kind, place and character, the trial court has the power, in its discretion, to order the indictments tried together if the defendants substantive rights would not
be prejudiced.  State v. Jones, 325 S.C. 310, 315, 479 S.E.2d 517, 519, (Ct. App. 1996); Simmons, 352 S.C. at 350, 573 S.E.2d at 860.  Further, joinder of offenses in one trial is proper if the offenses (1) are of the same general nature or character and spring from the same series of transactions, (2) are committed by the same offender, and (3) require the same or similar proof. Simmons, 352 S.C. at 351, 573 S.E.2d at 861 (quoting State v. Carter, 324 S.C. 383, 386, 478 S.E.2d 86, 88 (Ct. App. 1996)).  [O]ffenses are considered to be of the same general nature where they are interconnected.  Simmons, 352 S.C. at 350, 573 S.E.2d at 860.
Applying the foregoing to the facts of this case, we find the joinder of the two offenses was proper.  The two indictments levied against Rivera, CSC with a minor, first degree, and committing a lewd act upon a child, are of the same general nature in that they are interconnected.  They arose from an on-going series of events in a pattern of sexual abuse, i.e., a single criminal course of conduct.  City of Greenville v. Chapman, 210 S.C. 157, 161, 41 S.E.2d 865, 867 (1947).  Moreover, these acts were committed by the same offender and were proved by the same evidence and witnesses.  Finally, we discern no evidence in the record that any right of Rivera was prejudiced by the consolidation of these indictments.  Accordingly, the trial court did not abuse its discretion in declining to sever the indictments.
II.  Voir Dire
Rivera contends the trial court erred in denying his request to voir dire the potential jury panel as to their personal beliefs regarding whether or not a minor child could make up a story of sexual abuse without having experienced it.  We disagree.
In general, the scope of voir dire and the manner in which it is conducted are within the trial judges sound discretion.  To constitute reversible error, a limitation on questioning must render the trial fundamentally unfair. State
v. Hill, 361 S.C. 297, 308, 604 S.E.2d 696, 702 (2004), cert. denied, 125 S. Ct. 1977 (2005) (citations omitted).  Our supreme court has stated:

A juror should not, prior to trial, be required to assert which witnesses he will believe nor what type of witness he will believe. This is true because a juror should believe those witnesses whose credibility appeal to him after he has heard all of the testimony.  The question invades the province of the jury to determine individual credibility in the context of the entire case.  

State v. Adams, 279 S.C. 228, 235, 306 S.E.2d 208, 212 (1983), overruled, in part, on other grounds by State v. Torrence, 305 S.C. 45, 406 S.E.2d 315 (1991). 
During voir dire, Rivera submitted three questions for the court to ask the jury.  The court agreed to question the jury on all but the following request:  Is there any member of the jury panel who does not believe a child could make up a story of sexual abuse without having experienced it?  
We find the trial court did not abuse its discretion in refusing to submit this question to the jury.  In declining the request, the court properly exercised its discretion in that it questioned the jury with two of Riveras other requests.  Furthermore, we believe, as did the trial court, that the question at issue invaded the province of the jury on a credibility question.  Thus, we find the courts limitation of Riveras questions did not render the trial fundamentally unfair.
III.  Admissibility of Evidence
Rivera asserts the trial court erred when it admitted the testimony of State witnesses pursuant to hearsay exceptions to the South Carolina Rules of Evidence.  We disagree.  
The admission or exclusion of evidence is within the discretion of the trial court and will not be reversed on appeal absent an abuse of that discretion. 
State v. Foster, 354 S.C. 614, 620-21, 582 S.E.2d 426, 429 (2003). An abuse of discretion occurs when the trial courts ruling is based on an error of law.  Id. at 621, 582 S.E.2d at 429.  To warrant reversal, an appellant must show not only an alleged error, but also resulting prejudice.  State v. Fulton, 333 S.C. 359, 363-64, 509 S.E.2d 819, 821 (Ct. App. 1998).

A.      Admissibility of Testimony Pursuant to South Carolina Rule of Evidence 801(d)(1)(B)

Rivera contends the trial court erred, when pursuant to Rule 801(d)(1)(B), SCRE, it admitted the testimony of two State witnesses, Sandy Fehrman and Ty Bracken, regarding the victims prior consistent statements.  We disagree.
Under the hearsay exception noted in Rule 801(d)(1)(D), SCRE, a corroborating witnesss testimony in a criminal sexual conduct case is generally limited to the time and place of the incident.   However, an alternate exception noted in Rule 801(d)(1)(B) states: 

A statement is not hearsay if . . . [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is consistent with the declarants testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive; provided, however, the statement must have been made before the alleged fabrication, or before the alleged improper influence or motive arose.

The declarant, the victim in this case, testified, and Rivera cross- examined her by stating: 

 
 
 
 Q:
 And did you talk about what you talked about today with Sandy
 [Fehrman]?
 
 
 A:
 Yes.
 
 
 Q: 
 Okay.  And did she help you get ready to talk today?
 
 
 A:
 Yes.
 
 
 Q:
 Okay.  And do you know the police ladys name? 
 [Ty Bracken]
 
 
 A: 
 I forgot.
 
 
 Q: 
 Okay.  Did she help you to get ready to talk today?
 
 
 A: 
 Yes.
 
 
 Q:  
 Okay.  And did you  did she talk to you about what you talked about a lot today?
 
 
 A:
 Yes.
 
 
 
 . . .
 
 
 Q:
 Okay.  [Name of victim], did a lot of people talk to you to tell you how to talk today?
 
 
 A:  
 Yes.
 
 
 

The trial court found this line of questioning clearly implied that there had been a recent fabrication and, therefore, the door had been opened to the 801(d)(1)(B) hearsay exception.  

In discussing Rule 801(d)(1)(B), our supreme court has stated: 
 
The plain language of Rule 801(d)(1)(B) only permits evidence of a prior consistent statement when the witness has been charged with recent fabrication or improper motive or influence.  Although questioning a witness about a prior inconsistent statement does call the witnesss credibility into question, that is not the same as charging the witness with recent fabrication or improper influence or motive. 
 

State v. Saltz, 346 S.C. 114, 124, 551 S.E.2d 240, 245 (2001)(quoting Rule 801(d)(1)(B), SCRE).  [E]vidence of a prior consistent statement is only permitted when the elements of Rule 801(d)(1)(B) are met.  Foster, 354 S.C. at 621, 582 S.E.2d at 430.  This rule renders a hearsay statement potentially admissible if it is consistent with the declarants trial testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive. State v. Jeffcoat, 350 S.C. 392, 396, 565 S.E.2d 321, 323 (Ct. App. 2002)(quoting Rule 801(d)(1)(B), SCRE).  When all requirements of the rule are met, the whole of the prior statement, including specific details, is admissible in evidence.  Jeffcoat, 350 S.C. at 396, 565 S.E.2d at 323.
We agree with the trial courts assessment that defense counsels cross-examination of the victim implied improper influence or coaching, particularly by asking the victim, did a lot of people talk to you to tell you how to talk today as well as whether Fehrman and Bracken helped her get ready to talk today.  Because defense counsel opened the door, we affirm the courts decision to admit the witnesses testimony pursuant to Rule 801(d)(1)(B).  See Jeffcoat, 350 S.C. at 397, 565 S.E.2d at 324 (affirming trial courts decision to admit testimony of minor victims mother and post-trauma therapists testimony regarding victims out-of-court statements concerning sexual abuse pursuant to Rule 801(d)(1)(B) where defense counsel raised the issue of improper influence or coaching by asking Victim whether she practiced before testifying and whether anyone had told the Victim what to say); see also State v. Beam, 336 S.C. 45, 52, 518 S.E.2d 297, 301 (Ct. App. 1999) ([W]hen a party introduces evidence about a particular matter, the other party is entitled to explain it or rebut it, even if the latter evidence would have been incompetent or irrelevant had it been offered initially.).  Accordingly, we find no abuse of discretion by the trial court in allowing Fehrman and Bracken to testify to the victims prior consistent statements.
Alternatively, Rivera contends if we find that his line of questioning opened the door to the above hearsay exception, the testimony of Bracken and Fehrman was still improper because it was not consistent with the declarants testimony.  We disagree.
Bracken testified:  She [the victim] also stated that he had put her finger  his finger in her crotch and touched me for a long time.  Rivera contends that this was inconsistent because the victim never testified to this fact.  Although Rivera generally raised the issue of consistency in a conference held outside of the jury, he did not specify which statements he felt would be inconsistent, and he made no objection to the consistency of either Brackens or Fehrmans testimony at the time their statements were offered.  Thus, we do not believe this issue is preserved for our review.  State v. Burton, 326 S.C. 605, 611-12, 486 S.E.2d 762, 765 (Ct. App. 1997) (recognizing that a ruling during an in camera hearing still requires losing party to renew his or her objection at trial when the evidence is presented in order to preserve the issue for appeal); see also State v. Johnson, 324 S.C. 38, 41, 476 S.E.2d 681, 682 (1996) (noting a contemporaneous objection is required at trial to preserve an issue for appellate review); State v. Hoffman, 312 S.C. 386, 393, 440 S.E.2d 869, 873 (1994) (stating an issue that is not properly preserved cannot be raised for the first time on appeal); State v. Black, 319 S.C. 515, 521-22, 462 S.E.2d 311, 315 (Ct. App. 1995) (stating failure to object when evidence is offered constitutes a waiver of the right to raise issue on appeal).
Even if this issue were preserved for appeal, we find any inconsistency in the testimony was harmless.  In light of the other testimony in the record that established the necessary elements for the crimes charged, there is no evidence that the defendant was prejudiced.  See State v. Whisonant, 335 S.C. 148, 156, 515 S.E.2d 768, 772 (Ct. App. 1999) (finding [a]n improper introduction of hearsay evidence constitutes reversible error only if its admission is prejudicial to the defendant); State v. Reeves, 301 S.C. 191, 194, 391 S.E.2d 241, 243 (1990) (stating [e]rror is harmless when it could not reasonably have affected the result of the trial).          

B.      Admissibility of Testimony Pursuant to South Carolina Rule of Evidence 803(4)

Rivera argues the trial court erred when pursuant to Rule 803(4), SCRE, it admitted the testimony of State witness, Dr. Nancy Henderson, regarding the victims statements made to her during a medical examination.  Specifically, Rivera contends that because Dr. Henderson did not provide a diagnosis based on medical conclusions or a physical examination of the victim and relied exclusively on the victims statements to her, there was no diagnosis made which would trigger this hearsay exception. We disagree.

The hearsay exception noted in Rule 803(4) states: 
 
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:  Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment; provided, however, that the admissibility of statements made after commencement of the litigation is left to the courts discretion.
 

Rule 803(4) requires only that the statements be provided for the purpose of medical diagnosis.  We agree with the trial court that the statements the victim provided to Dr. Henderson were for the purpose of diagnosis.  The victims statements regarding how and when she was abused provided the doctor with specific areas to focus on, and specific conditions to search for when she performed the diagnostic physical exam.  Therefore, we find the trial court did not abuse its discretion in admitting this testimony.  See State v. Burroughs, 328 S.C. 489, 501, 492 S.E.2d 408, 414 (Ct. App. 1997) (Certainly, a statement that the victim had been raped or that the assailant had hurt the victim in a particular area would be pertinent to the diagnosis and treatment of the victim.).    
Additionally, Rivera claims that Dr. Henderson testified to statements made to her by the victim that were not necessary for medical diagnosis.  Rivera cites the following statements:  She [the victim] also said that he [Rivera] put his finger on her chest.  And also that he wanted her to put her hand down his pants, but she didnt.  Rivera never made any objection to this testimony, and therefore, this issue is not preserved for appeal.  See Johnson, 324 S.C. at 41, 476 S.E.2d at 682 (noting a contemporaneous objection is required at trial to preserve an issue for appellate review); Black, 319 S.C. at 521-22, 462 S.E.2d at 315 (stating failure to object when evidence is offered constitutes a waiver of the right to raise issue on appeal).
IV.  Mistrial
Rivera contends the trial court erred in denying his motion for a mistrial resulting from the States expert witness, Laurie Pinckney, revealing the name of the alleged perpetrator of the sexual abuse in violation of the trial courts order.  We disagree.
The decision to grant or deny a mistrial is within the sound
discretion of the trial court.  State v. Vazsquez, 364 S.C. 293, 299, 613 S.E.2d 359, 362 (2005).  The power of a court to declare a mistrial ought to be used with the greatest caution under urgent circumstances, and for very plain and obvious causes stated into the record by the trial judge.  State v. Simmons, 352 S.C. 342, 354, 573 S.E.2d 856, 862 (Ct. App. 2002)(quoting State v. Kirby, 269 S.C. 25, 28-29, 236 S.E.2d 33, 34 (1977)).  A mistrial should only be granted when absolutely necessary, and
a defendant must show both error and resulting prejudice in order to be entitled to a mistrial.  Simmons, 352 S.C. at 354, 573 S.E.2d at 862.  A mistrial should be ordered only when an incident is so grievous that prejudicial effect cannot be removed.  Vazsquez, 364 S.C. at 299, 613 S.E.2d at 362.
Pinckney, by the courts direction, was limited to discussing the alleged sexual assault in terms of time and place and was not permitted to identify Rivera.  Pinckney was questioned on direct examination and answered as follows:

 
 
 
 Q:
 And, again, pursuant to the Court rules, just answer very specifically.  Did she [the victim] tell you where she had been abused?
 
 
 A: 
 She stated that it was while her mom was  while John [Rivera] was baby sitting her.
 
 
 

Rivera objected and the jury was removed from the courtroom. Rivera then moved for a mistrial.  The judge denied this motion, but did offer Rivera an opportunity to suggest a curative instruction.  Rivera suggested an instruction that was given to the jury.  Rivera did not object to the sufficiency of the instruction.[2] 
Because Rivera suggested and accepted the curative instruction, we find this issue is not preserved for appeal.  See State v. Moyd, 321 S.C. 256, 263, 468 S.E.2d 7, 11 (Ct. App. 1996) (stating if objecting party accepts ruling of trial court and does not contemporaneously object to sufficiency of curative instruction or move for mistrial, error deemed cured and issue not preserved for appellate review).  
CONCLUSION
We hold the trial court did not abuse its discretion in:  declining to sever the indictments; refusing Riveras voir dire request; and admitting certain testimony under hearsay exceptions.  We also affirm the trial courts denial of Riveras motion for a mistrial.  Based on the foregoing, Riveras conviction and sentence for CSC with a minor, first degree, are
 AFFIRMED.
HEARN, C.J., and HUFF and BEATTY, JJ., concur.

[1] Although the jury convicted Rivera of both charges, the trial court granted Riveras motion to set aside the conviction for lewd act upon a child on the ground the State failed to prove every element of the charge.  Therefore, only the charge of CSC with a minor, first degree is at issue in this appeal.
[2] Rivera only submitted a specific curative instruction once his motion for mistrial was denied.