# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

Calvin D. Ford, Appellant.

Appellate Case No. 2019-001912

---

Appeal From Horry County
Benjamin H. Culbertson, Circuit Court Judge
Paul M. Burch, Circuit Court Judge

Opinion No. 5974
Heard December 7, 2022 – Filed April 5, 2023

---

## AFFIRMED IN PART, VACATED IN PART, AND REMANDED

---

Appellate Defender Jessica M. Saxon, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Deputy Attorney General Donald J. Zelenka, Senior Assistant Deputy Attorney General Melody Jane Brown, and Tommy Evans, Jr., all of Columbia, for Respondent.

---

**KONDUROS, J.:** Calvin D. Ford appeals his convictions for murder, possession of a weapon during the commission of a violent crime, and possession of a weapon by a felon. During Ford's immunity hearing pursuant to the Protection of Persons

and Property Act (the Act),[1] Ford asserts the circuit court erred in failing to sit as fact-finder at the immunity hearing.  Ford also contends the circuit court erred in determining the Act does not provide immunity from prosecution for possession of a weapon during the commission of a violent crime and unlawful possession of a weapon by a person convicted of a violent crime.  During Ford's trial, Ford asserts the trial court erred in allowing the State to introduce a witness's prior consistent statement.  Ford also contends the trial court erred in sentencing Ford to five years' imprisonment for possession of a weapon during the commission of a violent crime after sentencing him to life imprisonment without the possibility of parole for murder (LWOP).  We affirm the trial court's admission of a prior consistent statement, vacate Ford's sentence for possession of a weapon during the commission of a violent crime, and remand for the circuit court to make specific findings of fact that support whether Ford is, or is not, entitled to immunity for murder, possession of a weapon during the commission of a violent crime, and unlawful possession of a weapon by a person convicted of a violent crime.

**FACTS**

On June 22, 2017, an Horry County grand jury indicted Ford for the murders of Jamal Burgess and Dameion Alston, possession of a weapon during the commission of a violent crime, and unlawful possession of a weapon by a person convicted of a violent crime.  Ford moved for immunity from prosecution pursuant to section 16-11-450.  In that motion, Ford included a sworn statement from Aliga Campbell dated August 10, 2016.

Campbell described a "heated" conversation he had with Burgess at a birthday party on July 23, 2016 while Burgess was highly intoxicated.  During the conversation, Burgess explained his reasoning for knocking out Ford's teeth in an incident five years earlier and asked Campbell to call Ford and invite him to the party.  Campbell did not reach Ford, but Ford arrived at the party shortly afterward anyway.

According to Campbell, Burgess approached Ford soon after Ford arrived at the party, and they began talking.  Campbell recalled that Alston attempted to intervene in the conversation because it appeared Burgess was trying to fight Ford. Campbell stated that when Burgess pushed Alston to the side Alston's gun fell to

---

[1] *See* S.C. Code Ann. §§ 16-11-410 to -450 (2015).

the ground. Campbell claimed that Burgess then began firing his gun, and Ford picked up Alston's gun and returned fire. Campbell believed that Ford acted in self-defense because Burgess shot first and speculated that Burgess inadvertently shot Alston.

Campbell also claimed that the day before the shooting, Burgess rode by his house while he was outside with Ford. Campbell stated that when Burgess saw them he pulled his shirt up and showed a gun in his waistband. Campbell "took th[at] as a threat and a warning against Ford and anyone with Ford."

On September 14, 2017, Campbell was arrested for the murders of Burgess and Alston. The State tried Campbell with Ford. On March 5, 2019, Judge Culbertson conducted Ford's immunity hearing. When Ford called Campbell as a witness, Campbell's attorney informed the circuit court that he had advised, and would advise Campbell again, to invoke his Fifth Amendment right not to testify. Ford's counsel requested that Campbell take the stand solely to invoke his Fifth Amendment rights, but the circuit court did not allow Ford to call Campbell. Instead, the circuit court allowed Campbell's counsel to "assert his client's Fifth Amendment right."

Ford then stated he wanted to call a private investigator to testify about the contents of Campbell's statement. Ford argued the investigator's testimony should be permitted under Rule 804(b)(3) of the South Carolina Rules of Evidence because Campbell, the declarant, was unavailable after invoking the Fifth Amendment, and Campbell's statement was a statement against interest. The circuit court agreed that Campbell was unavailable but ruled that the statement was not against Campbell's interest.

Ford called his cousin, Everette Ford (Everette), as a witness at the immunity hearing. Everette testified that when Ford arrived at the party, Burgess called Ford over and put his arm around Ford in an aggressive manner. Everette also stated that Burgess was aggressive in his conversation with Ford because Burgess was "[m]ad about something." Everette explained that Ford removed Burgess's arm because Burgess had previously knocked Ford's teeth out in the same manner. Everette elaborated that Burgess was known for putting his arm around people and then hitting them with a gun.

According to Everette, Burgess took his gun out and Alston dropped his gun while trying to calm Burgess down. Everette claimed that when Alston dropped his gun, Burgess began shooting. Everette recalled that Ford picked up Alston's gun and ran away while returning fire as Burgess continued shooting. However, Everette admitted on cross-examination that his initial statement to law enforcement did not include his testimony that Alston dropped a gun that Ford picked up. Everette also admitted that Ford and Burgess had seen each other without having an altercation since Burgess knocked Ford's teeth out.

The State presented testimony from other witnesses during the immunity hearing. Felicia Williams testified that when she arrived at the party, Burgess and Ford were already talking with Alston between them. Williams stated that she heard Ford say he would fight but would not shoot. Williams recalled that she saw Burgess move Alston out of the way as Ford pulled out a gun and stated she ran into the nearby house after she heard gunshots. Williams testified that she did not see Burgess with a gun that night or Everette at the party.

Sherika Gore also testified that she did not see Burgess with a gun that night or Everette at the party. Gore recalled seeing Burgess and Ford talking but did not hear them yelling. However, in an earlier recorded statement given to law enforcement, Gore stated that the conversation between Ford and Burgess became heated. Gore testified that she ran when she noticed that Ford had a gun in his hand, but she did not see where Ford got the gun.

Additionally, officers that responded to the shooting testified they found six shell casings at the scene: five .380 shell casings were arranged linearly along the edge of the road, and one nine-millimeter shell casing was in the center of the road. Autopsies revealed that Burgess sustained a single gunshot wound, and Alston sustained three gunshot wounds.

At the conclusion of the immunity hearing, the circuit court denied Ford immunity and produced an order that stated Ford "failed to prove by a preponderance of the evidence that he is entitled to immunity." The circuit court also found that the Act did not provide immunity for the crimes of possession of a weapon during the commission of a violent crime and possession of a firearm by a felon.

The trial proceeded in front of Judge Burch on November 4, 2019. The State again called Gore as a witness during its case-in-chief. On cross-examination, Ford

revealed various inconsistencies between Gore's recorded statement, her immunity hearing testimony, and her direct examination testimony. Gore stated she could not remember telling law enforcement that she was unsure whether Ford came to the party to confront Burgess. Ford used portions of Gore's recorded statement and the immunity hearing transcript to refresh her recollection.

Additionally, Ford asked if Gore and Williams had discussed their recollections of the shooting. Gore replied that she had not discussed the incident with Williams, but Ford continued to ask Gore if she had.[2] Gore stated that she never went over her testimony with Williams but admitted that "[e]verybody" had discussed what they had seen the night of the shooting.

On redirect, the State moved to introduce Gore's entire recorded statement. When Ford objected, the State claimed that Ford made an allegation of recent fabrication and because Ford used portions of the interview to cross-examine Gore, the rules of evidence permitted the State to play the prior consistent statement. The trial court overruled Ford's objection and the State published Gore's recorded statement to the jury.

The jury acquitted Campbell of all charges and acquitted Ford of Alston's murder. However, the jury found Ford guilty of Burgess's murder, possession of a weapon during the commission of a violent crime, and unlawful possession of a firearm by a person convicted of a violent offense. The trial court sentenced Ford to LWOP for the murder conviction and five years for each weapons charge. This appeal followed.

**STANDARD OF REVIEW**

"The conduct of a criminal trial is left largely to the sound discretion of the trial [court; it] will not be reversed in the absence of a prejudicial abuse of discretion." *State v. Reyes*, 432 S.C. 394, 401, 853 S.E.2d 334, 337 (2020) (quoting *State v. Bryant*, 372 S.C. 305, 312, 642 S.E.2d 582, 586 (2007)). "An abuse of discretion occurs when a trial court's decision is unsupported by the evidence or controlled by

---

[2] Ford asked: "So[,] your dear friend, you guys have never talked about that night?"; "So[,] you've never said [to] the young woman who you told to get your children, . . . 'That's crazy,' or anything like that?"; "Have you ever talked about what you saw that night?"

an error of law." *Id.* at 401, 853 S.E.2d at 338 (quoting *Bryant*, 372 S.C. at 312, 642 S.E.2d at 586).

**LAW/ANALYSIS**

**I. Introduction of Prior Consistent Statement**

Ford argues the trial court erred in allowing the State to introduce Gore's full recorded statement. Ford asserts that he did not express or imply that Gore's testimony was recently fabricated or the result of improper influence or motive. Ford maintains that he simply impeached Gore with her prior inconsistent statements. We disagree.

> A statement is not hearsay if . . . [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive; provided, however, the statement must have been made before the alleged fabrication, or before the alleged improper influence or motive arose . . . .

Rule 801(d)(1)(B), SCRE. "Although questioning a witness about a prior inconsistent statement does call the witness's credibility into question, that is not the same as charging the witness with 'recent fabrication' or 'improper influence or motive.'" *State v. Saltz*, 346 S.C. 114, 124, 551 S.E.2d 240, 245 (2001).

In *State v. Jeffcoat*, the defendant was on trial for criminal sexual conduct with a minor in the first degree. 350 S.C. 392, 394, 565 S.E.2d 321, 322 (Ct. App. 2002). On cross-examination, the defendant asked the victim if she had talked with her mother about what she would say in court and if the solicitor had told her what to say. *Id.* at 397, 565 S.E.2d at 324. Over the defendant's objection and pursuant to Rule 801(d)(1)(B), SCRE, the victim's mother and therapist repeated the victim's statements describing the defendant's abuse. *Id.* at 395, 565 S.E.2d at 323. On appeal, this court determined that testimony by the victim's mother and therapist was proper under Rule 801(d)(1)(B), SCRE, because the defendant "raised the issue of improper influence or 'coaching' by asking [the v]ictim whether she

'practiced' before testifying and whether anyone had told her what to say." *Id.* at 397, 565 S.E.2d at 324.

Here, the trial court did not abuse its discretion in admitting Gore's recorded statement into evidence. Like the defendant's questions to the victim in *Jeffcoat*, Ford's questions about Gore's inconsistent statements raised the issues of recent fabrication and improper influence. Ford's questions did not simply impeach Gore; rather, Ford's questions implied that Gore either collaborated with Williams to fabricate her version of events or Williams improperly influenced Gore's testimony. Ford's implication of recent fabrication or improper influence is compounded by his persistence in repeating the questions until Gore admitted that she had discussed the incident with others. Therefore, the State was permitted to introduce Gore's full recorded statement under Rule 801(d)(1)(B), SCRE. Accordingly, we affirm as to this issue.

## II. Sentence for Possession of a Weapon During the Commission of a Violent Crime

On appeal, the State concedes that Ford should not have received a sentence for possession of a weapon during the commission of a violent crime because he was sentenced to LWOP for murder. The State asks this court to vacate that sentence. Accordingly, we vacate Ford's five-year sentence for possession of a weapon during the commission of a violent crime.

## III. Immunity Under the Protection of Persons and Property Act

Ford argues the circuit court erred by failing to make specific findings of fact on the elements of self-defense during Ford's immunity hearing. Ford also argues the circuit court erred in determining the Act does not provide immunity from prosecution for the associated weapons charges. We agree and remand for the circuit court to make specific findings of fact that support whether Ford is, or is not, entitled to immunity for murder, possession of a weapon during the commission of a violent crime, and unlawful possession of a weapon by a person convicted of a violent crime.[3]

---

[3] Because we remand, we do not address Ford's other contentions regarding the immunity hearing. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C.

"Section 16-11-450 provides immunity from prosecution if a person is found to be justified in using deadly force under the Act." *State v. Cervantes-Pavon*, 426 S.C. 442, 449, 827 S.E.2d 564, 567-68 (2019) (quoting *State v. Curry*, 406 S.C. 364, 371, 752 S.E.2d 263, 266 (2013)); § 16-11-450(A) ("A person who uses deadly force as permitted by the provisions of [the Act] or another applicable provision of law is justified in using deadly force and is immune from criminal prosecution and civil action for the use of deadly force . . . .").

"A claim of immunity under the Act requires a pretrial determination using a preponderance of the evidence standard, which [appellate] court[s] review[] under an abuse of discretion standard of review." *State v. Jones*, 416 S.C. 283, 290, 786 S.E.2d 132, 136 (2016) (quoting *Curry*, 406 S.C. at 370, 752 S.E.2d at 266). "[T]he circuit court is in the best position to assess witness credibility and make the necessary findings of fact." *State v. McCarty*, 437 S.C. 355, 375, 878 S.E.2d 902, 913 (2022).

At an immunity hearing, "the relevant inquiry is . . . whether the accused has proved an entitlement to immunity under the Act by a preponderance of the evidence." *State v. Andrews*, 427 S.C. 178, 181, 830 S.E.2d 12, 13 (2019). "[J]ust because conflicting evidence as to an immunity issue exists does not automatically require the [circuit] court to deny immunity; the [circuit] court must sit as the fact-finder at this hearing, weigh the evidence presented, and reach a conclusion under the Act." *Cervantes-Pavon*, 426 S.C. at 451, 827 S.E.2d at 569. "[T]he circuit court, in announcing its ruling, should at least make specific findings on the elements on the record." *State v. Glenn*, 429 S.C. 108, 123, 838 S.E.2d 491, 499 (2019); *see also McCarty*, 437 S.C. at 376, 878 S.E.2d at 913 ("[T]he circuit court shall make specific findings supporting its determination after considering all of the procedures . . . regarding the proper application of the Act.").

Our supreme court has made clear in *Cervantes-Pavon* and *McCarty* that the circuit court, sitting as fact-finder, must make specific findings that support its immunity decision. While the circuit court ruled that Ford did not prove by a preponderance of the evidence that he was entitled to immunity, the record contains no specific findings that support that determination. Therefore, the circuit

_____

598, 613, 518 S.E.2d 591, 598 (1999) (noting appellate courts need not address remaining issues when disposition of an issue is dispositive).

court erred. *See McCarty*, 437 S.C. at 374-75, 878 S.E.2d at 912-13 (finding the court of appeals erred in upholding the trial court's denial of immunity because the trial court did not make specific findings that appellate courts could review).[4]

The circuit court also erred in determining that the Act does not apply to Ford's weapons charges. A finding of immunity from prosecution for murder under the Act would necessarily mean the defendant was lawfully armed in self-defense[5] and therefore also immune from prosecution for the related weapons charges. Contrary to what the State argues on appeal, the circuit court did not deny Ford immunity for the weapons charges because it denied Ford immunity for the murder charges; it ruled that the Act does not apply to the weapons charges. That was error. Accordingly, we remand for the trial court to make specific findings that support its determination of whether Ford is, or is not, entitled to immunity under the Act.

**CONCLUSION**

We affirm the trial court's admission of Gore's prior consistent statement, vacate Ford's sentence for possession of a weapon during the commission of a violent crime, and remand for the circuit court to make specific findings of fact that support whether Ford is, or is not, entitled to immunity for murder, possession of a weapon during the commission of a violent crime, and unlawful possession of a weapon by a person convicted of a violent crime. Accordingly, Ford's case is

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

**HEWITT and VINSON, JJ., concur.**

---

[4] In fairness to the learned immunity hearing judge, Ford's immunity hearing occurred before *McCarty* was published.

[5] *See State v. Burriss*, 334 S.C. 256, 262, 513 S.E.2d 104, 108 (1999) (finding "a person can be acting lawfully, even if he is in unlawful possession of a weapon, if he was entitled to arm himself in self-defense at the time of the shooting").