558 S.E.2d 518

**The STATE, Respondent,**

**v.**

**Mandel SIMS, Appellant.**

**No. 25398.**

Supreme Court of South Carolina.

Heard Nov. 13, 2001.

Decided Jan. 14, 2002.

Deputy Chief Attorney Joseph L. Savitz, III, of the South Carolina Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General S. Creighton Waters, and Solicitor Warren B. Giese, all of Columbia, for respondent.

Justice MOORE.

Appellant appeals his conviction, claiming the trial court erred by allowing a police officer to give hearsay testimony and by limiting his cross-examination of a State witness regarding the witness's pending charges. We affirm.

## FACTS

On the morning of March 1, 1998, police were dispatched to an apartment because a five-year-old boy (hereinafter referred to as the son), had been found upset and crying outside the apartment of his mother, who was feared to be dead. When the police arrived, they discovered the son's mother (the victim), on her bed in a pool of blood. She had jagged, gaping cuts in her throat, and the blade of a knife was found protruding from one of the wounds. The victim did not die

immediately, but remained in a coma until her death on August 7, 1998.

At the conclusion of appellant's trial for murder, he was convicted and sentenced to life imprisonment.

## ISSUES

I.   Whether the trial court erred by allowing a police officer to give hearsay testimony?

II.   Whether the trial court erred by limiting appellant's cross-examination of a State witness regarding the witness's pending charges?

## DISCUSSION

### I.   Hearsay testimony

When police officer Sandra Thomas arrived at the scene of the crime, she assisted the victim's son.   At appellant's trial, Officer Thomas testified the son answered her questions in a vague and automatic manner.   She stated he did not give her any details and held his head down when answering questions. When the solicitor asked Officer Thomas about the son's answer to the question of who was in the apartment the night before, the defense objected on the grounds of hearsay.   The question was withdrawn.

After being found competent to testify, the son, who was six years old at the time of trial, initially answered the solicitor's questions.   He stated he remembered the night his mother was hurt and that someone else was in the home besides him and his mother that night.   He also stated he saw his mother getting hurt.   However, the son ceased answering questions and would not tell the jury the identity of the person who was in the apartment that night.   He was excused from the stand.

Defense counsel moved for a mistrial because the solicitor, in opening argument, had stated the son had seen appellant attacking his mother and would identify appellant as the perpetrator.   Counsel argued appellant had suffered insurmountable prejudice from that unfulfilled promise.   The court denied the motion, but gave a curative jury instruction, to which appellant objected.

Officer Thomas was then recalled to the stand. She again testified regarding the son's demeanor. She stated he appeared withdrawn and answered questions vaguely while keeping his head down. The solicitor again asked if the son had indicated who was in the apartment with he and his mother the night of the attack. When Officer Thomas stated he had so indicated, defense counsel objected on hearsay grounds. The trial court overruled the objection and allowed the testimony, stating it was for grounds that he would put on the record later.

The solicitor then asked Officer Thomas who it was the son had indicated was in the apartment the night of the victim's death. Officer Thomas gave appellant's name.

The trial court subsequently ruled the statement was hearsay; however, given the situation under which the son made the statement, it was admissible. The court pointed to the fact the son made the statement after he discovered his mother, and "in the throws [sic] of the police being there." The court further elaborated that "given the ... traumatic circumstances under which this statement was made, and the age of the child, and particularly with his moral accountability ... I think that gives credibility to what he said that would outweigh any objection as to hearsay."

■ " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801(c), SCRE. An excited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Rule 803(2), SCRE. A statement that is admissible because it falls within an exception in Rule 803, SCRE, such as the excited utterance exception, may be used substantively, that is, to prove the truth of the matter asserted. *State v. Dennis,* 337 S.C. 275, 523 S.E.2d 173 (1999).

■ The rationale behind the excited utterance exception is that the startling event suspends the declarant's process of reflective thought, reducing the likelihood of fabrication. *State v. Dennis, supra.* In determining whether a statement falls within the excited utterance exception, a court must consider the totality of the circumstances. *State v. McHoney,*

344 S.C. 85, 544 S.E.2d 30 (2001). Additionally, such a determination is left to the sound discretion of the trial court. *State v. Burdette*, 335 S.C. 34, 515 S.E.2d 525 (1999).

■ Officer Thomas's testimony that the son responded with appellant's name when she asked him who was in his home is hearsay. The testimony was offered to prove the truth of the matter asserted, that is, that appellant was in the victim's home the night of the attack. The question then becomes whether the statement is an excited utterance, which is an exception to the hearsay rule.

Three elements must be met to find the statement to be an excited utterance. First, the statement must relate to a startling event or condition. Second, the statement must have been made while the declarant was under the stress of excitement. Third, the stress of excitement must be caused by the startling event or condition. *See* Rule 803(2), SCRE.

The statement here clearly meets the first element because it relates to the startling event of the son seeing his mother after she was attacked and possibly while she was being attacked. As for the third element, if the son was under the stress of excitement, then that stress was caused by the startling event of seeing his mother being attacked and not being able to wake her.

As for whether the son was "under the stress of excitement," we first note that the amount of time that passed between the startling event and the time the statement was made is one of several factors to consider when deciding whether a statement is an excited utterance. The time period that could have possibly passed between the time of the attack and the time of the son's statement was approximately twelve hours. The victim left her cousin's home about 10:30 p.m. to return home. She was attacked sometime after she returned home. The police arrived on the scene at 11:28 a.m. the next day, and after 11:28 a.m., the son told Officer Thomas appellant had been in the home the previous night.

■ While the passage of time between the startling event and the statement is one factor to consider, it is not the dispositive factor. Even statements after extended periods of time can be considered an excited utterance as long as they

were made under continuing stress. *See, e.g., State v. Black-burn,* 271 S.C. 324, 247 S.E.2d 334 (1978) (noting that a time interval of over one hour, and up to eleven hours, did not necessarily eliminate a statement as part of the *res gestae* ). In this case, a five-year-old child possibly saw his mother being attacked and, at the very least, was left alone with his severely injured mother whom he could not wake, until he made his way outside to be found by a neighbor. Under these circumstances, we find the stress of excitement from those events lasts a longer period of time than would be likely to occur if the son had been an adult. *See, e.g., State v. Cude,* 784 P.2d 1197, 1200 (Utah 1989) (excitement generally lasts longer in children and fabrication is less likely).

Other factors useful in determining whether a statement qualifies as an excited utterance include the declarant's demeanor, the declarant's age, and the severity of the startling event. Clearly, the son's age and the severity of the startling event are factors that weigh in favor of finding his statement to be an excited utterance.

Regarding the son's demeanor, when the neighbor found the son, he could not be consoled and continued to cry. Police arrived soon thereafter. When Officer Thomas interacted with the son, his behavior was withdrawn and automatic, and he answered her questions in a vague manner. Officer Thomas also testified the son held his head down while answering questions. While the son was not crying or acting "excited" in the sense of being animated when he made the statement, we believe his demeanor can also be characteristic of someone who is under the "stress of excitement." *See, e.g., Dezarn v. State,* 832 P.2d 589, 591 (Alaska Ct.App.1992) (statement to mother by two-year-old child, who had been unusually quiet, concerning sexual abuse by defendant was excited utterance; extreme emotion can still a person's speech as well as evoke it); *State v. Kay,* 129 Idaho 507, 927 P.2d 897, 907 (Ct.App. 1996) (four-year-old child, who had dried tear tracks on face and was unusually subdued and quiet, was found to be under stress of abduction and molestation when making statements to mother and officer); *People v. Nevitt,* 135 Ill.2d 423, 142 Ill.Dec. 854, 553 N.E.2d 368, 376 (1990) (statement to mother by three-year-old child, who was uncharacteristically silent and withdrawn, concerning sexual abuse by defendant was

excited utterance); *State v. Hobby,* 9 Neb.App. 89, 607 N.W.2d 869, 876 (Ct.App.2000) (victim, who was upset, nervous, withdrawn, and uncomfortable, was speaking under stress of nervous excitement and shock produced by assault perpetrated by defendant); *State v. Kaytso,* 684 P.2d 63, 64 (Utah 1984) (child who gives statement under stress of nervous excitement need not be hysterical as long as still under emotional influence of the event); *Braxton v. Commonwealth,* 26 Va.App. 176, 493 S.E.2d 688, 692 (Ct.App.1997) (statement by three-year-old child approximately one hour after discovered with mother's body was admissible as excited utterance; although record did not establish how much time had passed following mother's death, child remained visibly distressed, i.e., was quiet and dazed, through time of statement).

Given the totality of the circumstances, we find the son was under the continuing stress of excitement when he told Officer Thomas appellant was in the home the night of the attack. *See State v. McHoney, supra* (in determining whether statement falls within excited utterance exception, court must consider totality of circumstances).

Accordingly, the trial court did not abuse its discretion in admitting the son's statement to Officer Thomas because the statement falls under the excited utterance exception to the hearsay rule.[1] *See State v. Burdette, supra* (determining whether statement falls within excited utterance exception is left to sound discretion of trial court).

## II. *Limitation on cross-examination*

Prior to the State's witness, Michael Peterson, taking the stand, defense counsel argued appellant should be allowed to ask Peterson about his pending charges. Defense counsel desired to question Peterson about what the pending charges were to show bias under Rule 608(c), SCRE, because Peterson had possibly been promised a deal in exchange for his testimo-

---

1. Although the son's statement was in response to a question, under the circumstances presented, we find this fact does not prevent his answer from being an excited utterance. *See, e.g.,* Zitter, Jay M., *When is Hearsay Statement "Excited Utterance" Admissible Under Rule 803(2) of Federal Rules of Evidence,* 155 A.L.R. Fed. 583 (1999) (statement made in response to question does not necessarily lack spontaneity, especially where declarant is a child).

ny. The State responded there was no promised deal, but that Peterson had been told when he went to trial on the charges, the State would tell the trial judge he had cooperated by testifying in the instant case. The trial court ruled defense counsel could generally ask whether Peterson had pending charges and whether there was anything promised him with regard to those pending charges. However, defense counsel was not allowed to question Peterson as to the crimes with which he was charged.

Peterson's pending charges were: (1) possession of crack cocaine with intent to distribute (PWID); (2) PWID within proximity of a school; (3) robbery, two counts; (4) first degree burglary; (5) grand larceny; (6) malicious injury to real property, two counts; and (7) possession of a controlled substance. If convicted of the first degree burglary charge, Peterson was facing a possible sentence of life imprisonment. S.C.Code Ann. § 16–11–311(B) (Supp.2000).

Peterson then took the stand. In response to questioning by the State, Peterson stated he had pending charges in the solicitor's office, but he had not been given a deal or promise of leniency. He acknowledged he had been told, when he proceeded to trial on his pending charges, the solicitor may tell the judge he cooperated.

Peterson then related what appellant told him while they were in a holding cell for their bond hearings. Peterson stated appellant said he choked his girlfriend, and

> [a]fter he choked her out, the little son come runnin' into the room and he pushed the little son out of the way. After that he say he got a knife and he started cuttin' on her neck. He said the knife was kinda dull so he started sawing with the knife. After that he decided to listen to her heart again to see whether it was still beating. Then after that he started stabbin' her in the neck with the knife. He say the knife broke off when he left.

Peterson stated when appellant was telling him about the crime, "he had a little smirk on his face like he was kinda proud of what he did." When an officer came to take them back to jail, Peterson stated he asked the officer to remove his handcuffs because he was angry and wanted to fight appellant.

On cross, defense counsel questioned Peterson as to what he expected to receive regarding his pending charges in exchange for his testimony. Defense counsel also questioned Peterson about his prior convictions.

Officer Thomas Hampe then testified that when he retrieved the prisoners to transport them back to the jail, Peterson approached him and stated he wished he could have his handcuffs and belly chains removed, so he could fight appellant because appellant had done something he did not like. Officer Hampe testified Peterson told him what appellant had said.

■ Appellant argues the trial court erred under Rule 608(c), SCRE, by preventing him from cross-examining Peterson about the specifics of the pending charges.[2]

Rule 608(c), SCRE, provides that "bias, prejudice or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by evidence otherwise adduced." Rule 608(c) "preserves South Carolina precedent holding that generally, 'anything having a legitimate tendency to throw light on the accuracy, truthfulness, and sincerity of a witness may be shown and considered in determining the credit to be accorded his testimony.'" *State v. Jones*, 343 S.C. 562, 541 S.E.2d 813 (2001) (quoting *State v. Brewington*, 267 S.C. 97, 226 S.E.2d 249 (1976)).

■ Appellant sought to expose Peterson's possible bias and prejudice by asking Peterson what the crimes were with which he was charged. Because of the number of charges pending against Peterson and the severity of the potential sentences, we find the evidence was probative on the issue of bias and should have been admitted. There was the substantial possibility Peterson would give biased testimony in an effort to have the solicitor highlight to his future trial judge how he had cooperated in the instant case. The excluded evidence had "a legitimate tendency to throw light on the

---

**2.** On appeal, appellant also argues the trial court's ruling violated the Sixth Amendment of the Constitution; however, this issue is not preserved for review because it was not raised at trial. *See State v. Hicks*, 330 S.C. 207, 499 S.E.2d 209, *cert. denied*, 525 U.S. 1022, 119 S.Ct. 552, 142 L.Ed.2d 459 (1998) (to be preserved for appeal, an issue must be raised to and ruled upon by the trial judge).

accuracy, truthfulness, and sincerity" of Peterson's testimony, *State v. Jones, supra.* Therefore, under these circumstances, we find the trial court committed error under Rule 608(c) by improperly limiting the scope of appellant's cross-examination.

However, the trial court's error of limiting the scope of appellant's cross-examination is harmless. *See State v. Mitchell,* 286 S.C. 572, 336 S.E.2d 150 (1985) (trial errors are harmless where they could not reasonably have affected result of trial). The State's case against appellant was strong without resorting to Peterson's testimony. For example, appellant's fingerprints were found on the headboard of the victim's bed. Further, the victim's mother testified when she informed appellant the victim was out of town on the day of the attack, appellant responded that he had told her not to go out of town. Finally, appellant approached two officers, who were at his home for questioning, with his hands "out in front of him" and spontaneously confessed, "I did it, I assaulted [the victim]."

Accordingly, while the trial court erred by limiting appellant's cross-examination of Peterson, the error was harmless because the error could not reasonably have affected the result of trial. *See State v. Mitchell, supra.*

**AFFIRMED.**

TOAL, C.J., WALLER, BURNETT and PLEICONES, JJ., concur.