THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
The State, Respondent,
v.
Victor Salgado, Appellant.
 
 
 

Appeal From Spartanburg County
 Doyet A. Early, III, Circuit Court Judge

Unpublished Opinion No. 2007-UP-134
Submitted March 1, 2007  Filed March 29, 2007

AFFIRMED

 
 
 
Chief Attorney Joseph L. Savitz III, of Columbia, for Appellant.
Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Sabrina C. Todd, all of Columbia; and Solicitor Harold W. Gowdy, III, of Spartanburg; for Respondent.
 
 
 

PER CURIAM:  Victor Salgado was convicted of criminal domestic violence, third or subsequent offense, and sentenced to thirty-three months in prison.[1]  He appeals, arguing the trial court erred in allowing the hearsay statements of his wife, who did not testify, into evidence.  We affirm.[2]
FACTS
On September 16, 2002, a crying five-year-old girl appeared at the front door of Sergeant Jerry Millwood of the Spartanburg County Sheriffs Office.  Based on comments the child made to him, Sergeant Millwood called 911 to report a possible criminal domestic violence at the house next door.  Deputy Tanya Aldridge and Sergeant McKnight responded to the scene.  They were met at the door by Salgado, and he denied that his wife, Laura Salgado (the victim), was home.  Deputy Aldridge and Sergeant McKnight searched the residence and discovered broken and misplaced furniture, food on the walls, blood on the floor, and broken dishes.  The victim was discovered in a rear bedroom with a destroyed doorframe.  She had fresh wounds on her head and arm.  Sergeant McKnight spoke with the victim at the scene, and she was bleeding, upset, and crying.  Although she initially did not answer Sergeant McKnights questions, the victim nodded her head affirmatively when Sergeant McKnight asked her whether he did this to her.  Salgado was the only other adult in the house at the time.  The victim agreed to give a statement to Deputy Aldridge.  Sergeant Millwood assisted with taking pictures of the crime scene.  Salgado was arrested for criminal domestic violence.   
By the time of the trial, the victim could not be located.  The State introduced the testimony of Sergeant Millwood, Deputy Aldridge, and Sergeant McKnight.  Over Salgados objections, Sergeant McKnight was allowed to testify that the victim identified Salgado as her assailant when she was asked whether he did this to her.  Although the victims written statement was not introduced, the photographs of the disarray in the house and of the victims injuries were introduced at trial.  Salgado was convicted of criminal domestic violence, third or greater offense, and sentenced to thirty-three months.  He appeals. 
LAW/ANALYSIS
Salgado argues the trial court erred by allowing into evidence the hearsay statement the victim gave to Sergeant McKnight identifying Salgado as her assailant.  He asserts that the victims statement was not an excited utterance, as the trial court found, because her answers to Sergeant McKnights questions were not spontaneous, but reluctant and the product of reflection.  We disagree.
Although hearsay is generally not admissible at trial, an excited utterance is an exception to the hearsay rule.  Rule 803(2), SCRE.  An excited utterance is a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.  Id.  The rationale behind the excited utterance exception is that the startling event suspends the declarants process of reflective thought, reducing the likelihood of fabrication.  State v. Sims, 348 S.C. 16, 20, 558 S.E.2d 518, 521 (2002).  For a statement to qualify as an excited utterance, three elements must be proven:  (1) the statement must relate to a startling event or condition; (2) the statement must have been made while the declarant was under the stress of the excitement; and (3) the stress of the excitement must have been caused by the startling event or condition.  Id. at 21, 558 S.E.2d at 521. 
Courts must consider the totality of the circumstances in determining whether a statement falls within the excited utterance exception.  Id. at 23, 558 S.E.2d at 522.  The burden of establishing facts which would qualify a statement as an excited utterance is upon the proponent of the evidence.  State v. Davis, 371 S.C. 170, 178-79, 638 S.E.2d 57, 62 (2006).  The determination of whether a statement is an excited utterance is a matter within the trial courts discretion.  State v. Burdette, 335 S.C. 34, 43-44, 515 S.E.2d 525, 530 (1999).
Initially, it is questionable whether this argument is preserved for review.  During Sergeant McKnights testimony, Salgado objected to the introduction of the victims statement as hearsay in general.  After Salgado raised his objection, the State argued that the statement was an excited utterance, the court overruled the objection, and testimony resumed.  Although the court clearly found that the statement was an excited utterance, Salgado never argued to the trial court that the victims statement was not an excited utterance because her answers were not spontaneous, were reluctant, and were the product of reflection.  Thus, the particular argument before us was never raised to the trial court and is not preserved for appellate review.  State v. Hicks, 330 S.C. 207, 216, 499 S.E.2d 209, 214 (1998) (holding that matters not raised to or ruled upon by the trial court are not preserved for appellate review).  
In any event, we find no merit to Salgados argument.  Testimony introduced at trial indicated that the house was in complete disarray, both Salgado and the victim were in the house together, and the victim was scared and bleeding from fresh wounds.  Suffering head and arm wounds during the destruction of the house was certainly a startling event.  The victim appeared to be still suffering from the stress of the event when the officers arrived at the scene.  Although the victim initially hesitated to speak with the officers, nothing in the record indicates that the initial hesitation was of such a duration as to allow the victim time for reflection.  Further, the testimony from both Deputy Aldridge and Sergeant McKnight was that the victim was still visibly upset and suffering from her wounds while still under the watchful eye of Salgado.  Considering the totality of the circumstances, we find the trial court did not abuse its discretion in finding the victims act of nodding her head affirmatively when asked whether Salgado injured her was an excited utterance.[3]  
CONCLUSION
Based on the totality of the circumstances, we find the trial court did not err in finding the victims statement was an excited utterance.  Accordingly, Salgados conviction and sentence are
 AFFIRMED.
 HUFF, BEATTY, and WILLIAMS, JJ., concur.

[1]  The South Carolina Department of Corrections website indicates that Salgado is not currently incarcerated.  
[2]  Because oral argument would not aid the court in resolving the issues on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.
[3]  Although not raised by Salgado, the State correctly points out that nonverbal communication can qualify as an excited utterance.  State v. McHoney, 344 S.C. 85, 94-95, 544 S.E.2d 30, 34-35 (2001) (noting that a victims nonverbal responses about her attacker as elicted by a nurse were excited utterances).