759 S.E.2d 434

**The STATE, Respondent,**

v.

**Matthew Ryan HENDRICKS, Appellant.**

Appellate Case No. 2011–203730.

No. 5225.

Court of Appeals of South Carolina.

Heard March 4, 2014.
Decided April 23, 2014.
Withdrawn, Substituted and Refiled June 30, 2014.
Rehearing Denied June 30, 2014.

526

Appellate Defenders Dayne C. Phillips and Carmen Vaughn Ganjehsani, both of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Assistant Deputy Attorney General David A. Spencer, both of Columbia, for Respondent.

FEW, C.J.

Matthew Ryan Hendricks appeals his convictions for kidnapping and two counts of criminal sexual conduct in the first degree. He argues the trial court erred in admitting a recording of the victim's mother's 911 call, in which the mother's statement to the 911 operator repeated the victim's statement of what Hendricks did to her. We find the trial court correctly admitted the victim's statement, but erroneously admitted the mother's statement. However, we find Hendricks suffered no prejudice from the error, and therefore we affirm.

## I. Facts and Procedural History

The State indicted Hendricks for kidnapping and two counts of criminal sexual conduct in the first degree in connection with his alleged rape of the victim. At trial, the victim testified she had known Hendricks for almost four years, and they had an "off and on" romantic relationship during which they often lived together. On the night of September 15, 2010, she heard her house shaking and thought somebody was breaking in. She realized it was Hendricks, who "was not himself at all. He was way out of character." Hendricks accused her of cheating on him, and then hit her on the arm, "jerked [her] up by the hair on [her] head," and took her to a bedroom. Once in the bedroom, Hendricks slammed her head

on the floor and told her to undress. She testified, "He tells me to turn over, he doesn't want to see my face." Hendricks then held her down on a bed while he "anally sexually assaulted" her. After the assault, she went to the bathroom, but Hendricks "told [her] to get back in" the bedroom. Hendricks again held her down and "[v]aginally" sexually assaulted her. Afterwards, Hendricks tried to "cuddle," but she refused and he left her house.

The victim testified she could only remember "bits and pieces" of what happened after Hendricks left. She did remember going to the bathroom because she was vaginally and anally bleeding. She took a shower because "there was blood everywhere." After showering, she woke her children and drove them to her mother's house.

Before the victim's mother—Lisa Gilstrap—testified, the State asked the trial court to address the admissibility of the recording of Gilstrap's 911 call. The State argued the recording was admissible as either a present sense impression or an excited utterance. Hendricks objected, but the trial court indicated it would allow the recording into evidence. The State did not play it for the jury at that time.

Gilstrap then testified she received a phone call from her daughter, who was crying and distraught. Her daughter told her Hendricks "had beaten her up and raped and sodomized her." Gilstrap testified that when her daughter arrived at her house, she was shaking and crying, had injuries on her face and arms, and looked like she had been in a fight. Gilstrap explained they first put the children to bed because they were her daughter's "paramount concern." Gilstrap then drove her daughter to the hospital because her daughter "was not able" to drive. Gilstrap called 911 on the way.

The State then moved to introduce the recording of the 911 call into evidence. Hendricks renewed his objection, but the trial court admitted the recording. The State then played a portion, which contained the following dialogue:

Operator: Pickens County Sheriff's Office.

Gilstrap: Yes, sir. This is Lisa Gilstrap.

Operator: Um-hum.

Gilstrap: My daughter's boyfriend just broke into her house, and beat her up and raped her. And we're on the

way to Easley Hospital. And I was wondering if you could send an officer up there.

Operator: Where did it happen?

Gilstrap: [provides her daughter's address and states her daughter is in the car]

Operator: She's already at the hospital?

Gilstrap: No, I'm fixing to take her. We live—I live in Forest Acres. She's got bruises all over and he sodomized her.

Operator: And what is your daughter's name?

Gilstrap: [provides her daughter's name] She's twenty-two. Her two boys were there. [six-second pause] And his name is Matthew Hendricks.

Hendricks testified in his defense, asserting he and the victim had consensual anal and vaginal intercourse. The jury found Hendricks guilty of kidnapping and two counts of criminal sexual conduct in the first degree, and the trial court sentenced him to eight years in prison.

## II. Hearsay

" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted" in the statement. Rule 801(c), SCRE. "Hearsay is not admissible" unless an exception applies, or "as provided by . . . other rules . . . or by statute." Rule 802, SCRE. The State argues the recording of Gilstrap's 911 call was admissible under the present sense impression and excited utterance exceptions. *See* Rule 803(1), SCRE (defining present sense impression as "a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter"); Rule 803(2), SCRE (defining excited utterance as "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition"). Hearsay within hearsay is admissible if each level of hearsay satisfies an exception to the hearsay rule. Rule 805, SCRE.

## A. Issue Preservation

■ Hendricks did not state his objection to the 911 recording with specificity, which raises concerns about issue preservation. *See* Rule 103(a)(1), SCRE ("Error may not be predicated upon a ruling which admits ... evidence unless ... a timely objection ... appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context."). We find, however, the hearsay basis for Hendricks' objection is apparent from the context. The State immediately responded to the objection by citing a case dealing with hearsay exceptions, and specifically argued the recording was admissible under the present sense impression and excited utterance exceptions in Rule 803(1) and (2). Therefore, the objection preserved the issue because it is clear from the record that both the State and the trial court immediately understood Hendricks' objection was based on hearsay. *See State v. Kromah*, 401 S.C. 340, 353, 737 S.E.2d 490, 497 (2013) (holding an issue was preserved when "[t]he trial court immediately appeared to understand the objection as a ... hearsay argument").

## B. The Victim's Statement to Gilstrap

■ Hendricks is correct the 911 recording contains two levels of hearsay. The first level is the victim's statement to Gilstrap reporting the details of the sexual assault and identifying Hendricks as the perpetrator. We find the victim's statement is hearsay because it is an out-of-court statement offered to prove the truth of the matter asserted in the statement—that Hendricks twice sexually assaulted her. *See* Rule 801(c), SCRE.

■ However, we believe the trial court acted within its discretion to admit this statement as an excited utterance. *See State v. Washington*, 379 S.C. 120, 123–24, 665 S.E.2d 602, 604 (2008) (stating the admission of an excited utterance "is within the sound discretion of the trial court and will not be reversed absent an abuse of discretion"). As our supreme court has explained, "the intrinsic reliability of an excited utterance derives from the statement's spontaneity[,] which is determined by the totality of the circumstances surrounding the statement when it was uttered." *State v. Ladner*, 373 S.C.

103, 119–20, 644 S.E.2d 684, 693 (2007); *see also State v. Sims,* 348 S.C. 16, 20, 558 S.E.2d 518, 521 (2002) (explaining "[t]he rationale behind the excited utterance exception is that the startling event suspends the declarant's process of reflective thought, reducing the likelihood of fabrication"); Fed.R.Evid. 803(2) advisory committee's note (stating "[s]pontaneity is the key factor" for admissibility of an excited utterance).

The supreme court has identified three elements a trial court must consider when determining whether a statement has the spontaneous quality necessary for admission as an excited utterance: "(1) the statement must relate to a startling event or condition; (2) the statement must have been made while the declarant was under the stress of excitement; and (3) the stress of excitement must be caused by the startling event or condition." *Washington,* 379 S.C. at 124, 665 S.E.2d at 604.

The victim's statement satisfies these requirements for admission as an excited utterance. Her statement related to Hendricks kidnapping, beating, and raping her. The victim's testimony about her physical and emotional state and Gilstrap's testimony her daughter was shaking, crying, and distraught both show the victim was under the stress of excitement when she made her statement. Gilstrap further testified her daughter was crying, "Momma, Momma, Momma" on the telephone and "just lost it" when she got to Gilstrap's house. Finally, the evidence supports the conclusion the sexual assault caused her stress. *See Sims,* 348 S.C. at 22, 558 S.E.2d at 521 (noting the declarant's demeanor and the severity of the startling event are factors a trial court should consider in determining whether a statement qualifies as an excited utterance). Thus, we find the trial court acted within its discretion to admit the victim's statement.

### C. Gilstrap's Statement to the 911 Operator

The second level of hearsay is Gilstrap's statement to the 911 operator repeating her daughter's statement, specifically that her daughter's "boyfriend just broke into her house, and beat her up and raped her. . . . [H]e sodomized her. . . . And his name is Matthew Hendricks." During oral argument, the State argued Gilstrap's statement is not hearsay because it did not offer the statement to prove the truth of the matter

asserted in the statement, but rather to explain why the police came to the hospital. We acknowledge there may have been some minimal probative value in admitting the statement for that purpose. However, the reason the police arrived at the hospital was not a significant issue at trial. The probative value in Gilstrap's statement was in the truth of what is asserted in the statement—that Hendricks raped and sodomized her daughter. Consequently, we find Gilstrap's statement is hearsay. *See* Rule 801(c), SCRE.

■ The State argues Gilstrap's statement is nevertheless admissible as a present sense impression or as an excited utterance. We disagree. There are three elements to the foundation for the admission of a hearsay statement as a present sense impression: (1) the statement must describe or explain an event or condition; (2) the statement must be contemporaneous with the event; and (3) the declarant must have personally perceived the event. *See* Rule 803(1), SCRE; *see also United States v. Mitchell*, 145 F.3d 572, 576 (3d Cir.1998) (listing the "three principal requirements" for a statement to be admissible as a present sense impression).

We find the evidence does not support the admission of Gilstrap's statement as a present sense impression. The "event" Gilstrap described in her statement was the rape, which Gilstrap did not perceive. *See generally State v. Davis*, 371 S.C. 170, 180–81 n. 9, 638 S.E.2d 57, 63 n. 9 (2006) (noting the declarant's statement about a shooting was not admissible as a present sense impression because there was no evidence the declarant saw the shooting). Moreover, though Gilstrap's statement might have been contemporaneous with her daughter's statement, it was not contemporaneous with the rape.

■ The State also argues Gilstrap's statement was admissible as an excited utterance. We recognize Gilstrap must have had an intense emotional reaction when she first heard her daughter had been raped. However, the State has not shown the nature of her reaction was such that it generated the spontaneity that gives an excited utterance its inherent reliability. *See Ladner*, 373 S.C. at 119–20, 644 S.E.2d at 693. Moreover, the State did not show Gilstrap was still under the required stress of excitement when she actually made her statement. *See Davis*, 371 S.C. at 180, 638 S.E.2d at 62

(finding the State elicited no evidence the declarant "was still under the stress or excitement of [the victim's] shooting," and "[t]herefore, the State did not meet its burden of establishing a foundation for the excited utterance").

First, Gilstrap did not immediately call 911 when her daughter called and told her what happened. Instead, she waited for her daughter to arrive at her house, giving her time to reflect on what her daughter told her. *Contra State v. McHoney*, 344 S.C. 85, 94–95, 544 S.E.2d 30, 34–35 (2001) (concluding the declarant's statement was an excited utterance and "inherently reliable" because "[t]here was no time for the [declarant] to reflect on the event"). Second, Gilstrap helped her daughter put the children to bed before calling 911. Third, Gilstrap testified she drove the car because her daughter "was not able." Gilstrap *was* calm enough to drive, and her voice sounds calm on the audio recording of the 911 call.

Finally, the statement itself indicates Gilstrap was not speaking spontaneously, and her process of reflective thought had not been suspended. *See Sims*, 348 S.C. at 20, 558 S.E.2d at 521. Her request that the 911 operator send an officer to the hospital demonstrated the purpose of her call was in large part to initiate criminal prosecution against Hendricks. Gilstrap also told the 911 operator, "He has beat her up before but he has never raped her"; "He has charges pending"; and "I have a trespassing notice on him here."[1] These comments have nothing to do with her daughter's welfare or need for medical attention, but show Gilstrap reflected on these past events and then attempted to convince the 911 operator Hendricks deserved to be prosecuted. *Cf.* Fed.R.Evid. 803(2) advisory committee's note ("The theory of [the excited utterance exception] is simply that circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication."); Rule 803, SCRE, note (providing South Carolina's exception for excited utterances is identical to the federal rule). Thus, we find the record does not support the admission of the statement as an excited utterance, and the trial

---

1. The three comments quoted in this sentence are from a portion of the 911 recording that was not played for the jury.

court did not act within its discretion when it admitted Gilstrap's statement to the 911 operator.

### III. Admission of Gilstrap's Statement Caused No Prejudice

█ Despite the error in the admission of Gilstrap's statement, we find Hendricks suffered no prejudice. *See State v. Weston,* 367 S.C. 279, 288, 625 S.E.2d 641, 646 (2006) ("The improper admission of hearsay is reversible error only when the admission causes prejudice."). The substance of Gilstrap's out-of-court statement was already in evidence through her and the victim's trial testimony, before the trial court admitted the 911 recording. Specifically, Gilstrap testified her daughter called and told her Hendricks "had beaten her up and raped and sodomized her."

This testimony contained only one level of hearsay and was properly admitted because the victim's statement to Gilstrap qualified as an excited utterance. The victim also testified she called her mother and told her what Hendricks did to her. The victim's testimony was admitted without objection before the admission of the 911 recording.

Hendricks argues the admission of Gilstrap's statement caused him prejudice because it corroborated the victim's trial testimony. He relies on *State v. Whisonant,* 335 S.C. 148, 515 S.E.2d 768 (Ct.App.1999), in which we stated, " 'Improper corroboration testimony that is *merely cumulative to the victim's testimony* ... cannot be harmless, because it is precisely this cumulative effect which enhances the devastating impact of improper corroboration.' " 335 S.C. at 156, 515 S.E.2d at 772 (emphasis in original) (quoting *Jolly v. State,* 314 S.C. 17, 21, 443 S.E.2d 566, 569 (1994)). However, this case is distinguishable from *Jolly* and *Whisonant* because the evidence that Hendricks argues impermissibly corroborated the victim's testimony was properly admitted in evidence through Gilstrap's trial testimony. Thus, the corroboration that Hendricks contends was improperly achieved by Gilstrap's statement had already been properly accomplished by live testimony. The admission of Gilstrap's statement, therefore, did not prejudice Hendricks because it was cumulative to properly admitted evidence that corroborated the testimony of

the victim. Any further corroboration of the victim's trial testimony by Gilstrap's statement on the 911 recording was minimal. *See State v. Jennings*, 394 S.C. 473, 478, 716 S.E.2d 91, 93–94 (2011) ("Improperly admitted hearsay which is merely cumulative to other evidence may be viewed as harmless.").

Accordingly, we find Hendricks has not demonstrated prejudice from the erroneous admission of Gilstrap's statement. *See State v. Brockmeyer*, 406 S.C. 324, 356, 751 S.E.2d 645, 662 (2013) (holding "the improper admission of hearsay constitutes reversible error only when it results in prejudice, [and because the appellant] failed to show he was prejudiced, [he] failed to show reversible error").

## IV. Conclusion

The trial court acted within its discretion to admit the victim's statement on the 911 recording, but erred in admitting Gilstrap's statement. However, we find Hendricks suffered no prejudice from this error. Accordingly, we **AFFIRM.**

SHORT and GEATHERS, JJ., concur.