777 S.E.2d 1

**The STATE, Respondent,**

v.

**Leslie PARVIN, Appellant.**

**Appellate Case No. 2012–205888.
No. 5254.**

Court of Appeals of South Carolina.

Heard Feb. 5, 2014.
Decided July 30, 2014.
Reheard Jan. 13, 2015.
Withdrawn, Substituted, and Refiled June 10, 2015.
Rehearing Denied Oct. 8, 2015.

Dwight Franklin Drake and Michael J. Anzelmo, both of Nelson Mullins Riley & Scarborough, LLP, of Columbia, for appellant.

Attorney General Alan McCrory Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General Brendan Jackson McDonald, and Solicitor Daniel Edward Johnson, all of Columbia, for respondent.

LOCKEMY, J.

In this criminal appeal, Leslie Parvin argues the trial court erred in allowing inadmissible hearsay testimony from two witnesses. We affirm.

**FACTS**

Parvin was indicted on two counts of murder related to the deaths of Edgar Lopez and Pablo Guzman–Gutierrez. The State tried the case under the theory that Parvin solicited Lopez for sex and then killed Lopez and Gutierrez in retaliation when Lopez refused him later in the night. Parvin argued self-defense.

**Motion In Limine**

Immediately prior to trial, Parvin made a motion in limine to exclude any testimony referring to other crimes, wrongs, or bad acts. He contended any statements alleging he was at Lopez's home for homosexual sex were inadmissible. Specifically, he objected to statements from three different witnesses—testimony from Adan Soto and Marlin Avila regarding statements made by Lopez at a gas station and testimony from José Monroy regarding statements Monroy overheard at Lopez's home. For purposes of this appeal, we focus only on the contested testimony from Soto and Avila, which will be referred to as the Lopez statements. Parvin does not appeal any issue related to Monroy's testimony.

Parvin argued (1) the Lopez statements were inadmissible pursuant to Rule 404(b), SCRE, because the State could not prove by clear and convincing evidence Parvin committed any

bad acts; (2) the State was improperly introducing the Lopez statements to prove he was of bad character; and (3) the Lopez statements were more prejudicial than probative. Parvin also contended the Lopez statements would be inadmissible as hearsay.

The State argued the Lopez statements were admissible under the theory of res gestae or the present sense impression exception to the hearsay rule.[1] As to the issue of res gestae, the State asserted there was an ongoing chain of events and the Lopez statements were an integral part of the crime. The State also contended the Lopez statements were admissible under Rule 803(3), SCRE, as statements of the declarant's "[t]hen existing mental, emotional, or physical condition." Finally, the State emphasized that the Lopez statements also indicated Parvin's alleged motive and were not intended to show bad character. The State, however, asserted it was not attempting to enter the Lopez statements pursuant to Rule 404(b), SCRE.[2]

The trial court ruled the Lopez statements (1) were admissible under the res gestae theory, (2) constituted an exception to the hearsay rule, and (3) were probative to the issue of Parvin's motive. During trial, the trial court clarified its decision and stated that in admitting the testimonies under the res gestae theory, the testimonies "did not involve other crimes, but may have suggested some bad acts." It further stated the probative value of the evidence outweighed the prejudicial effect.

**Parvin's Version of the Events**

Parvin testified that on July 30, 2010, the day of the incident, he was driving his van and collecting scrap metal for recycling and profit. He carried a forty-five caliber pistol in his van as a result of his prior military service. On the way

---

1. The State cited *State v. Simpson*, 325 S.C. 37, 479 S.E.2d 57 (1996), and *State v. Adams*, 322 S.C. 114, 470 S.E.2d 366 (1996), to support its arguments.

2. Rule 404(b), SCRE, provides, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible to show motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent."

home from an unsuccessful search, Parvin bought beer and passed Lopez's home, where Lopez and Gutierrez were drinking beer in the yard. Parvin stated he assumed the men were in the construction industry due to their attire and could possibly have leads regarding scrap metal. Parvin stopped in the yard and began speaking and drinking with Lopez and Gutierrez. Parvin claimed he did not want to immediately ask for connections or leads on scrap metal and first wanted to establish some sort of relationship with the men.

Parvin agreed to drive Lopez to the gas station for more beer and gave Lopez money for the beer. While at the gas station, Parvin claimed Lopez observed him move his gun from between the front seats and place it in the waistband of his shorts. Parvin remained in the van while Lopez entered the store and purchased the beer. Parvin and Lopez then returned to Lopez's home. Throughout the evening, several people came and left the home until only Parvin, Lopez, and Gutierrez remained. Parvin stated that when he tried to leave, Lopez would not let him and requested more money. Parvin refused and then asked for the change from the beer Lopez had purchased earlier in the night. Lopez became upset and threatened Parvin and Parvin's family. When Parvin attempted to leave again, Gutierrez blocked his exit. Gutierrez made physical contact with Parvin and tried to obtain control of Parvin's gun. Parvin kept control of his gun and saw Lopez reach for something in the shed located in the yard. Parvin stated he became fearful for his life at that time and shot both Lopez and Gutierrez in self-defense.

**The State's Case**

In support of its version of events, the State offered testimony from Monroy, who claimed he was drinking with Parvin, Lopez, and Gutierrez prior to the incident. Monroy stated he overheard Lopez tell Gutierrez that Parvin would be sleeping inside with Lopez that evening. The beer was depleted at some point during the evening, and Lopez asked Parvin to drive him to a gas station to purchase more. The State presented testimony from Soto and Avila, who spoke with Lopez at the gas station.[3] Soto and Lopez were both from

---

3. Parvin objected to the testimony immediately prior to Soto's and Avila's answers, but the trial court overruled the objection.

Guatemala, and Soto knew Lopez through Soto's sister-in-law. Soto stated Lopez approached him and began talking with him. Lopez mentioned he was at the gas station with an American to purchase a case of beer and further explained Parvin had offered him $200 to buy the beer and have sex. Lopez then showed Soto the $200 but told Soto he was going to tell Parvin to go home. Avila testified Lopez made similar comments to her inside the store.

After returning to Lopez's home, the State opined Parvin became angry because Lopez refused to have sex with him. The State presented Roberto Gonzalez–Merrin as an eyewitness to the shooting. Merrin explained Parvin pulled a gun from his back and shot Lopez before turning the gun on Gutierrez, who was attempting to flee the scene, and shooting him in the back. Merrin testified that when the shooting occurred, Parvin was outside of the fence that surrounded Lopez's front yard while Lopez and Gutierrez were both inside the fence.

Following the shooting, Parvin fled the scene in his minivan. Parvin then returned to his home, destroyed the gun used in the shooting, checked his family into a motel for the evening, changed his appearance, and drove his minivan to Louisiana. While in Louisiana, Parvin sold his minivan for scrap and continued to Texas. Parvin returned to Columbia on August 15, 2010, and despite knowing the authorities were looking for him, he never attempted to contact police. Police obtained warrants for Parvin's arrest for murder after Monroy identified Parvin in a photographic lineup. Police eventually arrested Parvin pursuant to search and arrest warrants executed at his home.

**Verdict**

The jury convicted Parvin of two counts of murder, and the trial court sentenced him to thirty-five years' imprisonment. Parvin moved for a new trial, which the trial court denied. This appeal followed.

**LAW/ANALYSIS**

■ Parvin argues the trial court erred in allowing Soto and Avila to testify about the Lopez statements. Specifically, he argues the Lopez statements were hearsay and did not

qualify as present sense impressions under Rule 803(1), SCRE. We agree.

■ "The admission or exclusion of evidence is a matter within the trial court's sound discretion, and an appellate court may disturb a ruling admitting or excluding evidence only upon a showing of 'a manifest abuse of discretion accompanied by probable prejudice.' " *State v. Dennis*, 402 S.C. 627, 635, 742 S.E.2d 21, 25 (Ct.App.2013) (quoting *State v. Douglas*, 369 S.C. 424, 429, 632 S.E.2d 845, 847–48 (2006)).

■ "Hearsay is an out of court statement, offered in court to prove the truth of the matter asserted." *State v. Townsend*, 321 S.C. 55, 59, 467 S.E.2d 138, 141 (Ct.App.1996). "Hearsay is inadmissible as evidence unless an exception applies." *Id.* Rule 803(1), SCRE, provides for the "present sense impression" exception, which allows for the admission of "a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." "There are three elements to the foundation for the admission of a hearsay statement as a present sense impression: (1) the statement must describe or explain an event or condition; (2) the statement must be contemporaneous with the event; and (3) the declarant must have personally perceived the event." *State v. Hendricks*, 408 S.C. 525, 533, 759 S.E.2d 434, 438 (Ct.App.2014). Our courts have not delineated a time frame that would constitute "immediately thereafter"; however, this court has held a statement given nearly ten hours after the perceived incident cannot be admitted under Rule 803(1). *See State v. Burroughs*, 328 S.C. 489, 499, 492 S.E.2d 408, 413 (Ct.App.1997).

Parvin contests the admission of the following testimony from Soto:

Q: And did you have a chance to speak to [Lopez] on that day?

A: Yeah, I spoke to him the day that I saw him at the gas station at that time.

. . . .

Q: And while you were talking to [Lopez], did he mention what he was doing at the gas station?

A: Yeah, he told me he was going to buy a case of beer, that he was with an American.

Q: Okay. Did he say anything else about the American and the beer?

A: Yes, he said the American had given him $200 to buy beer because he wanted to have sex with him.

Parvin also contests the admission of the following testimony from Avila:

Q: What did [Lopez] tell you about what he was doing with that American?

A: He said that the American had given him money to buy beer and he said the American had given him $200 to have sex.

The witnesses gave no indication as to the amount of time between when Parvin allegedly solicited sex and when Lopez spoke with them. The State simply explained it was an "ongoing chain of events." We find the trial court erred in ruling the Lopez statements were admissible because the timing of the declarant's statement is a critical component of the present sense impression exception.

Despite finding error in the trial court's ruling, we must also find the error prejudiced Parvin before we can reverse. *See State v. Garner*, 389 S.C. 61, 67–68, 697 S.E.2d 615, 618 (Ct.App.2010) ("[I]mproper admission of hearsay testimony constitutes reversible error only when the admission causes prejudice. Such error is deemed harmless when it could not have reasonably affected the result of the trial, and an appellate court will not set aside a conviction for such insubstantial errors." (citation and internal quotation marks omitted)).

Later at trial, the State presented Investigator William Gonzalez as a witness. Investigator Gonzalez recorded statements from both Avila and Soto regarding the night of the incident. On cross-examination, Investigator Gonzalez testified, without objection, about a report he prepared following his interview of Avila and Soto.

Q: And in your report you noted that [Avila] told you that ... [Lopez] referred to the American as "the fuc* * * * American," and you put that in your report?

A: That's correct. . . .

Q: And the next—I'm sorry. You were also involved in, as the solicitor stated, the arrest of—

A: Well, it—can I clarify one thing? It wasn't just "the fuc* * * * American." It was "the fuc* * * * American [who] gave me $200 to have sex with him."

The State also presented Investigator Brien Gwyn as a witness to testify regarding his interview of Avila and Soto. On direct examination, he testified without objection, "Both in their statement advised us that according to [Lopez]'s conversation with [Soto and Avila] in the store or at the store, [Lopez] was solicited for sex by the individual he was at the store with." On cross-examination, Parvin asked Investigator Gwyn whether the store was "the place where [Lopez was] telling [Avila] about this sex for money," and Investigator Gwyn replied that it was. Later on cross-examination, Parvin asked the officer if "the only evidence that you have that there is a sex for money is the words of a man who [had a] .379 [blood alcohol content]," and Investigator Gwyn replied, "From two separate witnesses, yes."

■ We find the trial court's error in admitting Soto's and Avila's hearsay testimonies was rendered harmless because they subsequently became cumulative to Investigator Gonzalez's and Investigator Gwyn's unobjected-to testimonies. *See Townsend,* 321 S.C. at 59, 467 S.E.2d at 141 ("Where the hearsay is merely cumulative to other evidence, its admission is harmless."); *State v. Kirby,* 325 S.C. 390, 396–97, 481 S.E.2d 150, 153 (Ct.App.1996) (finding even if an officer's testimony regarding information radioed by the police dispatcher was inadmissible hearsay, its admission was harmless because it was cumulative to similar testimony that was admitted without objection).

On rehearing, Parvin argues our finding of harmless error is contrary to the rule of appellate preservation that a party need only object once and obtain a ruling from the trial court to preserve an issue for appellate review. *See State v. McDaniel,* 320 S.C. 33, 37, 462 S.E.2d 882, 884 (Ct.App.1995) ("So long as the judge had an opportunity to rule on an issue, and did so, it was not incumbent upon defense counsel to harass the judge by parading the issue before him again." (internal quotation marks omitted)). Parvin asserts that our

holding requires for the first time "that a party must object to the same evidence repeatedly in order to avoid losing an appeal based on a 'harmless error' analysis." We disagree. Although Parvin objected to Soto's and Avila's hearsay testimonies, he did not object to Investigator Gonzalez's or Investigator Gwyn's testimonies, nor does he challenge the admission of the officers' testimonies on appeal. *See State v. Kirton,* 381 S.C. 7, 37–38, 671 S.E.2d 107, 122 (Ct.App.2008) (finding any error in allowing the victim's testimony that the defendant sexually assaulted the victim six years earlier was harmless when, although the defendant objected to the victim's testimony, he "did not timely object" to testimony from two other witnesses regarding the defendant's touching of the victim prior to the sexual assault for which the defendant was charged).

Parvin further asserts our holding "contradict[s]" Rule 17 of the South Carolina Rules of Criminal Procedure, which states "[i]f an objection has once been made at any stage to the admission of evidence, it shall not be necessary thereafter to reserve rights concerning the objectionable evidence." We disagree. A review of the historical notes to Rule 17 indicates this language was "taken from Rule 43(c)(1), SCRCP." *Id.* In *Parr v. Gaines,* 309 S.C. 477, 424 S.E.2d 515 (Ct.App.1992), this court rejected a similar argument in the context of Rule 43(c)(1). We explained Rule 43(c)(1), which uses the exact same language as Rule 17, "merely states that once a contemporaneous objection has been made, no further reservation of rights is needed to preserve the objection." *Id.* at 482, 424 S.E.2d at 519. Our court specifically noted, however, Rule 43(c)(1) "does not alter the rule requiring a contemporaneous objection" when evidence is presented to preserve the issue of its admissibility on appeal. *Id. Parr* therefore makes clear Rule 17, similar to Rule 43(c)(1), did not relieve Parvin of his requirement to object to Investigator Gonzalez's and Investigator Gwyn's testimonies to challenge the admissibility of their testimonies on appeal.

We find *State v. Ladner,* 373 S.C. 103, 644 S.E.2d 684 (2007), similar to the present case. *Ladner* involved a prosecution for criminal sexual conduct with a minor. *Id.* at 106, 644 S.E.2d at 686. At trial, the State moved to admit a witness's testimony that after the sexual assault, the two-year-

old victim told the witness her "tooch" hurt, and after the witness asked what happened, the victim responded by saying the defendant "did it" and then quickly stating he "didn't do nothing." *Id.* at 113, 644 S.E.2d at 689. Over the defendant's objection, the trial court allowed the witness's testimony, finding the victim's statement the defendant "did it" was admissible as an excited utterance. *Id.* at 115, 644 S.E.2d at 690. On appeal, our supreme court found no error in allowing this testimony because the victim's statement qualified as an excited utterance. *Id.* at 116–17, 644 S.E.2d at 690–91. In addition, the supreme court found "any arguable error regarding [the witness's] testimony would be deemed harmless" because "[o]ther hearsay statements by the victim identifying [the defendant] were also admitted during the State's case." *Id.* at 113 n. 8, 644 S.E.2d at 689 n. 8. Specifically, a doctor who examined the victim after the assault testified later at trial, without objection, the victim "indicated . . . she had been touched by her aunt's boyfriend [who] was previously identified at triage as someone named Bryan. And I asked her if the aunt's boyfriend was [the defendant] and she told me yes." *Id.*

Here, as in *Ladner*, the admission of Soto's and Avila's testimonies was rendered harmless in light of the other evidence that was later admitted at trial without objection. The investigators' unobjected-to testimonies was other evidence that tended to support the substance of Soto's and Avila's testimonies—that Parvin offered Lopez $200 in exchange for sex. Because this other evidence became cumulative to Soto's and Avila's testimonies and was admitted without objection, we find the error in allowing Soto's and Avila's testimonies was rendered harmless.

We note that several other occurrences at trial further support our conclusion that the error in admitting Soto's and Avila's testimonies was harmless. For example, during voir dire and before Parvin's motion in limine to exclude any statements that Parvin was at Lopez's home for homosexual sex, the trial court informed the pool of potential jurors that the trial might involve "allegations of homosexuality . . . and/or sex for money." Moreover, during opening arguments, the State asserted, without objection, that Lopez told Avila and Soto "I'm here with the white American. I'm getting

some beer and he offered to pay me money for sex." Likewise, Parvin's counsel told the jury Avila and Soto planned to testify that Lopez told them "[t]his fuc* * * * American gave me money for beer. This fuc* * * * American gave me $200 to have sex with him, but I'm not going to do it." While the trial court's comments during voir dire and counsels' opening arguments are not evidence Parvin offered Lopez $200 for sex, these instances show how this issue permeated the entire trial. Finally, as previously stated, Parvin does not challenge Monroy's testimony that he overheard Lopez tell Gutierrez that Parvin would be sleeping inside with him that evening. Accordingly, when considering Soto's and Avila's hearsay testimonies in relation to the entire record, the trial court's error in allowing this testimony was harmless.

## CONCLUSION

For the forgoing reasons, we find the trial court's error in allowing Soto's and Avila's testimonies was rendered harmless because it became cumulative to other evidence later admitted at trial without objection. Thus, the trial court is

**AFFIRMED.**

WILLIAMS and KONDUROS, JJ., concur.